STEPHEN CHEEKS *v.* STATE OF INDIANA.

[No. 876S247. Filed April 19, 1977.]

*Jan E. Helbert,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Kenneth R. Stamm,* Deputy Attorney General, for appellee.

ARTERBURN, J.—The Appellant, Stephen Cheeks, was convicted of two counts of armed robbery on March 23, 1976. On April 23, 1976, the Appellant was sentenced on the two counts to concurrent determinate sentences of ten and twenty years. A motion to correct errors was filed with the trial court on May 17, 1976. This appeal is taken from the denial of that motion on May 20, 1976.

The evidence at trial revealed that on April 17, 1975, at approximately 12:30 a.m., two black males entered a Kroger food store on North Michigan Road in Indianapolis. They carried guns and, after ordering a store cashier to lie on the floor, took the contents of a cash drawer. That drawer contained something over a hundred dollars in cash, some food

stamps, and a personal check that had been initialed by the cashier. A blue purse was also taken from a customer in a check-out line. The two men then ran from the store.

Officers of the Marion County Sheriff's Department quickly arrived on the scene. A radio dispatch was broadcast to the effect that the store had been robbed by two Negro males. When a motorist in the vicinity reported to police that he saw a large blue automobile leave the Kroger parking lot at a high rate of speed and head south on Michigan Road, another dispatch reporting those facts was broadcast. This second broadcast also stated that a purse had been stolen.

Deputy Sheriff James Geloff was patrolling in his car on North Michigan Road when he received a radio dispatch that the Kroger store had been robbed by two Negro males. He then saw a blue automobile containing three black men traveling south on Michigan Road. He followed the car and, when he received the second dispatch describing the vehicle seen leaving the Kroger lot, stopped it. When assistance arrived, the officer pointed a flashlight into the back seat of the car and observed a blue purse. He searched the Appellant and found in the Appellant's pants $155.00 in cash, five food stamps, and a personal check.

While Deputy Geloff was following the car in question, he had seen something leave one of its windows on the passenger side. A search of the area in which this occurred led to the discovery of two handguns, one of which was identified at trial as used in the robberies charged. One of the witnesses of the robberies, taken to the scene of the Appellant's arrest, identified him at that time as one of the robbers. The Appellant was similarly identified at trial.

The Appellant presents four issues for review by this Court, but concedes in the argument portion of his brief that one of those issues is unsupported by the record and is "without arguable merit." We therefore consider the remaining three issues.

## I.

It is first contended that the trial court erred in overruling a defense motion for discharge based upon Ind. R. Crim. P. 4(A). We point out that the Appellant was not entitled to *discharge* under that provision of Ind. R. Crim. P. 4. The record reveals, however, that the Appellant's motion also moved for the alternative relief of release on his own recognizance, the remedy provided under Ind. R. Crim. P. 4(A). Properly stated, the error alleged here concerns the denial of that release.

Ind. R. Crim. P 4(A) reads in pertinent part as follows:

"No defendant shall be detained in jail on a charge, without a trial, for a period in aggregate embracing more than six (6) months from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge (whichever is later) ; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; * * *"

The Appellant concedes that a number of continuances chargeable to the defense occurred in this case. The Appellant's concession is, we think, somewhat understated. This case began with continuance of the Appellant's arraignment, upon defense motion, for a period of a week. Two continuances "by agreement" of the Appellant's pre-trial conference in June, 1975, delayed that conference four weeks. An additional continuance of undetermined duration was apparently had on July 9, 1975. While a motion for separate trials by one of the Appellant's codefendants was filed on July 11 and granted on July 30, the record does not indicate that anything further occurred in this case until October 1, when the pre-trial conference was concluded and an October 6 trial date set.

A delay of at least five weeks and at most some three months can thus be attributed to the Appellant. These facts alone show that denial of the Appellant's November 3, 1975, motion for discharge was proper, even if only the five week

delay is considered. His additional motion for discharge on January 5, 1976, may have been properly denied under these facts if the higher figure is accepted. We find, however, that denial was proper for still another reason.

On October 6, 1975, the Appellant's trial was continued until January 5, 1976, due to the illness of one of the State's witnesses. No objection to this delay was made by the Appellant until November 3, when his motion for discharge was filed. This failure of the Appellant to object at the earliest opportunity waived his right to discharge. *Bryant* v. *State,* (1973) 261 Ind. 172, 301 N.E.2d 179. Moreover, the trial court found that its record indicated that the Appellant *agreed* to the January 5 trial date. On November 19, 1975, following this finding by the trial court, the Appellant stated that he wanted that date for his trial. His subsequent motion for discharge filed the day trial was to begin was therefore untimely and without merit.

The Appellant's brief suggests, in rather confusing fashion, that the Appellant should not be charged with knowledge of all that takes place in court and that the trial court "should be charged with a duty to inquire personally of the defendant if he understands the ramifications of his appearance that day in court. . . ." We point out, however, that the law assumes that laymen cannot at all times understand legal proceedings. That is why the right to representation by an attorney is so jealously guarded. The Appellant was represented by counsel and it appears that he wishes to attack the adequacy of that representation. There is a presumption that counsel has been competent. *Greer* v. *State,* (1975) 262 Ind. 622, 321 N.E.2d 842. The Appellant presents no evidence to overcome this presumption.

## II.

The second contention presented by the Appellant is that the trial court erred in overruling a defense motion to suppress evidence seized at the time of the Appellant's arrest. It is asserted that "the evidence presented demonstrated that there

was a lack of probable cause for the stopping of the vehicle in which the defendant was riding as a passenger, nor did the facts and circumstances then in the possession of the officer making the stop provide even reasonable suspicions that the vehicle contained persons involved in a crime or the fruits of instrumentalities of a crime." We cannot agree.

When Deputy Sheriff Geloff stopped the automobile in which the Appellant was riding, he was in possession of at least the following information on the crimes in question: 1) Two Negro males had robbed the Kroger store on North Michigan road; 2) Near the time of the robbery, a large blue automobile was seen driving from the Kroger parking lot at a high rate of speed; 3) This blue car headed south on Michigan Road; 4) A woman's purse was taken during the robbery; 5) The crimes occurred at approximately 12:30 a.m., when it may be presumed that traffic was not at its peak level.

The question before this Court is whether the facts known to Deputy Geloff at the time he stopped the car "were sufficient to warrant a man of reasonable caution in the belief that an investigation was appropriate." *Luckett* v. *State,* (1972) 259 Ind. 174 at 180, 284 N.E.2d 738 at 742. Geloff began following the car in question just minutes after the commission of the crime when he observed it heading south on Michigan Road and saw that it contained three black men. While following it, he observed something "go out" a window in the vehicle's passenger side. When the subsequent dispatch describing the car seen leaving the Kroger lot matched the car he was following, we think Geloff was in possession of enough facts to justify stopping the car for further investigation. *Luckett* v. *State, supra; see also Williams* v. *State,* (1974) 261 Ind. 547, 307 N.E.2d 457.

Deputy Geloff waited for the arrival of assistance before approaching the automobile. When he did, he directed his flashlight to the rear seat of the car and observed a woman's purse. This purse was in open view and its discovery was not the product of a search in the constitutional sense. *Denson*

v. *State,* (1975) 263 Ind. 315, 330 N.E.2d 734. After observation of the purse, the Appellant and his companions were ordered from the car. The Appellant was advised of his constitutional rights and was frisked. This limited search is authorized by statute and is constitutionally permissible. Ind. Code § 35-3-1-2 (Burns 1975); *Terry* v. *Ohio,* (1968) 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. It was during this frisking that Deputy Geloff discovered something stuffed down the front of the Appellant's pants. Ordered to remove the articles from his pants, the Appellant produced a wad of some one hundred and fifty-five dollars, five food stamps, and a personal check. We find the seizure of these items to be proper, as was their admission into evidence at trial.

### III.

Finally, it is alleged that the trial court erred in permitting jurors to ask questions of witnesses by submitting questions in writing to the court through the bailiff at the conclusion of direct and cross-examination. Before any question so submitted was posed to a witness, defense and prosecution counsel were summoned to the bench, shown the question, and asked if there were any objections. The Appellant objected to no particular questions, but objected to the *procedure* used on the apparent grounds that it would be prejudicial to the defense to present any objection to such a question in the view of the jury.

This Court has stated in the past that the propounding of questions by jurors is a matter within the sound discretion of the trial court. *Carter* v. *State,* (1968) 250 Ind. 13, 234 N.E.2d 650. At the same time, we have cautioned that this practice is not one to be encouraged, since the nature of such a situation naturally causes hesitation on the part of counsel who wish to object to a question. *Cherry* v. *State,* (1972) 258 Ind. 298, 280 N.E.2d 818; *Carter* v. *State, supra.* The procedure used in this case, in which counsel are summoned to the bench to see the question

before it is posed, would seem to be intended to permit objections out of the hearing, if not the presence, of the jury. The Appellant has not shown that this procedure failed to remedy the problem raised in the *Carter* and *Cherry* decisions, nor has he presented any question posed through this procedure as improper or prejudicial. (The Appellant states that three such questions were posed, but does not include them or appropriate references to the record in his argument.) We can find no abuse of discretion under these circumstances.

Finding no error, we affirm the judgment of the trial court.

Givan, C.J., Hunter, Prentice, JJ., concur; DeBruler, J., concurs in result.

NOTE.—Reported at 361 N.E.2d 906.