Gregory M. DOLEZAL and Beverly J. Dolezal, Husband and Wife, and Genevieve Dolezal, Their Minor Daughter, Plaintiffs-Appellants,

v.

Robert J. GOODE and Starke Memorial Hospital, Defendants-Appellees.

No. 3–381A71.

Court of Appeals of Indiana, Third District.

April 13, 1982.

---

829

Charles A. Asher, Myron J. Hack, South Bend, for plaintiffs-appellants.

Edward A. Chapleau, Chapleau, McInerny, Minczeski & Farabaugh, South Bend, for defendant-appellee Robert J. Goode.

R. Kent Rowe, South Bend, for defendant-appellee Starke Memorial Hospital.

GARRARD, Judge.

Beverly Dolezal had worked as an assistant for Dr. Robert Goode. During her pregnancy Beverly consulted with Dr. Goode and he advised her on prenatal care. Late in the pregnancy Dr. Goode discovered that the fetus was in a breech presentation and he advised that the baby be delivered by caesarean section. On May 20, 1977 another physician, Dr. Law, delivered the infant girl by caesarean section in Starke Memorial Hospital. Dr. Goode was in at-

tendance as an assistant. He fully examined the infant immediately after birth. He found that she was in good health, being orthopedically and neurologically sound.

Dr. Goode visited Beverly and the infant daily. On the day of discharge, the 24th of May, Dr. Goode looked in on Beverly and the infant. He determined that the infant was healthy after he observed her behavior, but he did not conduct an extensive examination of the infant because she had been dressed and bundled for her trip home.

On May 26 Beverly noticed that the infant's upper left leg was swollen and that the infant did not want the leg moved. The next day Beverly was examined by Dr. Goode and she mentioned the infant's swollen leg. Dr. Goode examined the infant and ordered that x-rays be taken. The x-rays indicated that the infant was suffering from a fracture of the upper left femur. The infant was then admitted to the La-Porte Hospital where she was treated for the fracture.

Beverly and her husband Gregory filed suit against Starke Memorial Hospital and Dr. Goode. As to Starke Memorial, the Dolezals alleged that their infant daughter was negligently injured by someone within the employ of the hospital. The action against Dr. Goode asserted that his decision not to conduct a pre-discharge examination of the infant caused the infant's injuries to go untreated and become exacerbated, all of which constituted medical malpractice.

The Dolezals' case proceeded to trial. Because the extent of the injury to the infant was unknown, the Dolezals asked for a bifurcated trial so that the issue of liability could be tried in the present action but the question of the amount of damages could be postponed. The court granted this motion.

After the Dolezals rested their case, Starke Memorial and Dr. Goode each moved for a judgment on the evidence pursuant to Indiana Rules of Procedure, Trial Rule 50. The trial court denied Starke Memorial's motion but granted a judgment on the evidence in favor of Dr. Goode.

The issue of Starke Memorial's negligence was submitted to the jury, which returned a verdict in favor of the hospital. The Dolezals filed a motion to correct errors and from a denial of that motion they now appeal.

The appellants raise two distinct issues:
1.  Did the trial court err in granting Dr. Goode's Trial Rule 50 motion for a judgment on the evidence?
2.  Did the trial court err in giving jury instruction 7?

ISSUE I

The Dolezals contend that the judgment on the evidence at the close of their case in chief was in error because their proof established a prima facie case of medical malpractice against the doctor. They assert the evidence shows that Dr. Goode had a duty to perform a pre-discharge examination of the infant and that his cursory observation of the clothed child on the day of release was below the level of care owed by him.

■■■ Since a judgment on the evidence was granted at the close of plaintiff's case, the issue on appeal is whether there was sufficient evidence presented by the Dolezals to establish a prima facie case of medical malpractice. *Killebrew v. Johnson* (1980), Ind.App., 404 N.E.2d 1194, 1196. To make a prima facie case a plaintiff must show that (1) a duty was owed to him by the defendant; (2) the defendant breached this duty by permitting his conduct to fall below the set standard of care; and (3) the plaintiff suffered a compensable injury proximately caused by the defendant's breach of duty.

The doctor's Trial Rule 50 motion asserted that in a medical malpractice case the plaintiff must establish the requisite standard of care by utilizing expert testimony. Because the Dolezals did not call medical experts to testify as to whether the recognized standard of care required a pre-discharge examination, the doctor contended that the Dolezals failed to carry their burden of proof. The trial court agreed and

granted the motion. The doctor maintains these arguments on appeal.

The Dolezals argue that a jury, without the guidance of experts, could reasonably have found that the doctor's failure to perform a pre-discharge examination constituted negligence. Also, they assert that Dr. Goode's testimony established a standard of care and that his actions fell below that standard.

In the usual negligence action the defendant's conduct is judged against what a reasonable man would do under the circumstances.

"The traditional standard to be applied is whether the defendants exercised their duty with the level of care that an ordinary prudent person would under the circumstances."

*Miller v. Griesel* (1974), 261 Ind. 604, 308 N.E.2d 701, 706.

■ However, in caring for and treating the ailment of his patient a physician is recognized as holding himself out to have the special qualifications of his profession and the reasonable character of his conduct is to be judged by them.

"The degree of skill and care required of the physician or surgeon who is employed because he is a specialist, is that degree of skill and knowledge which is ordinarily possessed by physicians and surgeons who devote special attention to the ailment, its diagnosis and treatment, in similar localities. *Worster v. Caylor,* supra, 231 Ind. 625, 110 N.E.2d [337] at 339; *Baker v. Hancock* (1902), 29 Ind. App. 456, 64 N.E. 38."

*Bassett v. Glock* (1977), Ind.App., 368 N.E.2d 18, 22.

■ The question of whether a physician has exercised the degree of skill and care possessed by physicians in the locality involves questions of science and professional judgment which are outside the realm of the layperson. *Adkins v. Ropp* (1938), 105 Ind.App. 331, 14 N.E.2d 727.

"Indiana courts have held that this question may not be resolved without resort to expert testimony. Similarly, ex-pert opinion is indispensable to an evaluation of a particular defendant's conduct within the framework of the duty imposed by law.

\*    \*    \*    \*    \*    \*

[T]he substantive law requires expert opinion as to the existence and scope of the standard of care which is imposed upon medical specialists and as to whether particular acts or omissions measure up to that standard of care."

*Bassett v. Glock, supra,* 368 N.E.2d at 23–4. *See, e.g., Davis v. Schneider* (1979), Ind. App., 395 N.E.2d 283; *Cochrane v. Lovett* (1975), 166 Ind.App. 684, 337 N.E.2d 565.

■ The Dolezals did not call an expert to testify on the issue of malpractice. Thus, no medical testimony was presented establishing that a pre-discharge examination was a necessity to the delivery of reasonable care rendered by physicians in attending the birth of a child. The appellants did ask Dr. Goode whether he recognized the standards and publications of the American Academy of Pediatrics (A.A.P.) to be authoritative in the field to which they spoke. The doctor replied that he recognized the publication as authoritative. Appellants' counsel then read an excerpt from an A.A.P. publication which stated that "A complete examination [of an infant] should be performed within twenty-four hours by the physician in charge of the infant." The doctor agreed with the statement. Appellants' counsel then read another excerpt which stated that an examination should be made within 12 hours before the baby is discharged. The doctor disagreed with this proposition. The Dolezals assert that by agreeing with the first excerpt Dr. Goode recognized the standards of care put forth by the publication. Hence, he was bound by the publication's second proposition that a pre-discharge examination should be conducted. We do not accept the Dolezals' argument. Whatever the worth of this A.A.P. publication, the act of reading excerpts to the doctor did not establish a standard of care.

Dr. Goode performed an examination of the infant immediately after her birth.

Naturally, he would agree with the propriety of such a procedure, regardless of what source espoused it. Agreement with the procedure followed in one statement does not bind him to the procedures outlined in another statement emanating from the same source.

Furthermore, no evidence was adduced that the procedures outlined by the publication are necessary or appropriate to the degree of skill and care required in the locality where Dr. Goode practiced, in Knox, Indiana. Appellants' cross-examination of Dr. Goode did not establish what standard of care was owed by the doctor to the Dolezals and their infant daughter.

We are also concerned by an issue which the parties have not addressed. We noted above the elements of a cause of action for negligence, with the third element being that the plaintiff suffer a compensable injury proximately caused by the defendant's breach of duty. The evidence herein does not prove how any failure to conduct an examination *proximately* caused injury to the infant.

■ The Dolezals asked for a bifurcated trial, requesting that the issue of damages be tried in separate proceedings. At issue in the present trial were the doctor's and hospital's liabilities. While the evidence established that the infant's femur was fractured, no evidence was presented as to whether the infant would have permanent disabilities resulting from an omission of care on the part of Dr. Goode. The Dolezals sued the doctor on the grounds that his failure to closely examine the infant proximately caused the infant's injuries to be aggravated. However, no evidence of any aggravation of the injury was presented at trial and, therefore, the plaintiffs failed to show a causal-link between omission of care by Dr. Goode and alleged injuries suffered by the infant. While the damages from an aggravation of the injury might not be fully ascertainable because of the infant's age, the fact that an aggravation occurred because of a delay in treatment had to be shown before a cause of action existed against the doctor.

Dr. Goode was under a duty to conform his professional conduct to the standard of care followed by the physicians in his locality. However, the Dolezals did not produce expert testimony for the purpose of establishing that a pre-discharge examination was required under the standard of care followed in the locality and owed by the doctor. Without a standard of conduct or level of care against which to judge the doctor's conduct, the issue of whether or not his cursory examination of the infant before discharge constituted negligence cannot be ascertained.

■ The Dolezals argue that the necessity and propriety of a pre-discharge examination was so evident that a layperson could reasonably conclude the failure to do so was negligence without the guidance of expert testimony. We do not agree. The evidence shows that Dr. Goode examined the infant when she was born, and that he checked on the infant daily. Also, he visited the mother and infant on the day of discharge and considered them to be healthy enough to leave the hospital. The Dolezals argue that the examination of the child on the day of discharge was not extensive enough to reveal an injury such as a fractured femur and thus was negligent care of the child. Since the doctor did observe the child before discharge, the issue is whether he should have conducted a more specific and detailed examination of the infant. This issue raises the question of what degree of care should have been rendered under the circumstances and this we find to be a question best determined by expert testimony, requiring professional knowledge and judgment beyond the realm of the layperson.

For the above reasons, the judgment on the evidence in favor of Dr. Goode is affirmed.

ISSUE II

Concerning the verdict in favor of the hospital, the Dolezals assert that part of the court's preliminary instruction No. 7 was erroneous and constituted reversible error. They request that a new trial be granted against Starke Memorial.

The instruction, in the relevant portion, read:

"During the progress of the trial, none of you, as jurors, are permitted to ask questions of any of the witnesses, the parties or their attorneys."

The record indicates that the appellants objected vigorously to this instruction being given. The appellants informed the trial court that in *Carter v. State* (1968), 250 Ind. 13, 234 N.E.2d 650 our Supreme Court determined that such an instruction was improper and constituted reversible error. Counsel for Starke Memorial also stated to the trial court his belief that the instruction was erroneous. Despite the protestations of both counsel, the trial court read preliminary instruction No. 7 to the jury. The Dolezals argue that they are entitled to a new trial because the instruction was clearly erroneous under *Carter v. State, supra.* Starke Memorial defends the verdict in its favor, arguing that any error was harmless in that the Dolezals have failed to demonstrate how they were prejudiced. Starke Memorial also asserts that *Carter* and the other cases relied upon by the Dolezals are criminal cases and inapplicable here because the present action is a civil case. Upon a review of *Carter* and its progeny, we conclude that under the current law of this state, the instruction constitutes reversible error. Thus we remand this case for a new trial on the issue of Starke Memorial's liability.

In *Carter* the trial court gave an instruction containing language identical to that quoted above, instructing the jury that they could not ask questions of the witnesses, parties or their attorneys. Our Supreme Court concluded that jurors have a right to ask questions during trial, although the court has considerable discretion in handling them.

"The practice of permitting jurors to propound questions should not be encouraged by the Trial Court, but it should not be forbidden by preliminary instruction. As a question is propounded during the course of a trial it is within the sound discretion of the Trial Court to make a determination as to whether the question is for the evident purpose of discovering the truth and whether such question is proper."

*Carter*, at 234 N.E.2d 652.

Thus *Carter* held that jurors cannot be deprived, by a preliminary instruction, of the opportunity to ask questions of a witness. However, the judge is under no obligation to inform the jurors that they are entitled to ask questions according to *Cherry v. State* (1972), 258 Ind. 298, 280 N.E.2d 818. In *Cherry* the Supreme Court held that no error occurred where the trial court refused to instruct the jury that they could ask questions of the witnesses during the trial. The court, in so holding, reiterated that:

"*Carter v. State* (1968), 250 Ind. 13, 234 N.E.2d 650, cited by Defendant to support the giving of the tendered instruction, held only that it was error to instruct the jury that they could not ask questions. This is not tantamount to instructing the opposite, in fact in that case, we announced that while questions from the jury should not be forbidden, the practice of permitting them to propound questions should not be encouraged. The reasons are well stated in *White v. Little*, 131 Okl. 132, 268 P. 221, at page 222, cited therein:

'Generally jurors are not familiar with the rules governing the admission of evidence, and in the very nature of such a situation counsel quite naturally will hesitate to object to a question propounded by a juror, even though it may be incompetent and this practice is so dangerous to the rights of the litigant that we cannot encourage the practice.'"

280 N.E.2d at 820.

In *Cheeks v. State* (1977), 266 Ind. 190, 361 N.E.2d 906 the appellant alleged error in the procedure followed by the court.

"This Court has stated in the past that the propounding of questions by jurors is a matter within the sound discretion of the trial court. *Carter v. State* (1968), 250 Ind. 13, 234 N.E.2d 650. At the same

time, we have cautioned that this practice is not one to be encouraged, since the nature of such a situation naturally causes hesitation on the part of counsel who wish to object to a question. *Cherry v. State* (1972), 258 Ind. 298, 280 N.E.2d 818; *Carter v. State, supra.* The procedure used in this case, in which counsel are summoned to the bench to see the question before it is posed, would seem to be intended to permit objections out of the hearing, if not the presence, of the jury. The Appellant has not shown that this procedure failed to remedy the problem raised in the *Carter* and *Cherry* decisions, nor has he presented any question posed through this procedure as improper or prejudicial. (The Appellant states that three such questions were posed, but does not include them or appropriate references to the record in his argument.) We can find no abuse of discretion under these circumstances.

Finding no error, we affirm the judgment of the trial court."

361 N.E.2d at 910.

The trial court apparently believed that the court in *Cheeks* held that the trial judge has the absolute discretion over the propounding of questions, even to the extent of precluding them by a preliminary instruction. We disagree. The essence of *Carter* is that jurors may not be instructed at the commencement of trial that they are prohibited from asking questions. Once the question is asked, the judge has wide discretion in setting the procedure by which the question will be resolved and in determining whether the question "is for the evident purpose of discovering the truth and whether such question is proper." *Carter* at 234 N.E.2d 652.

In the most recent case on the subject, our Supreme Court in *Tyson v. State* (1979), Ind., 386 N.E.2d 1185, 1192 said:

"This Court has previously held that it is proper to permit jurors to propound questions during the progress of a trial, subject to proper regulation by the trial court. *Carter v. State* (1968), 250 Ind. 13, 234 N.E.2d 650. We have further held

that the recommended procedure in this situation would be to summon counsel to the bench in order to examine the question posed, and to make any objections outside the hearing, if not the presence, of the jury. *Cheeks v. State* (1977), Ind., 361 N.E.2d 906. Although we do not recommend the procedures used by the trial court in the present case, we cannot say that appellant was prejudiced to an extent which would require reversal of his conviction."

■ Thus, in the cases subsequent to *Carter* we find no deviation from the basic tenet of *Carter* that the jury has a right to ask questions of a witness and that this right cannot be foreclosed by an instruction directly to the contrary.

Starke Memorial argues that the rule adopted in *Carter*, a criminal case, is not applicable in the present action because it is a civil case. We do not find this to be a controlling distinction.

Starke Memorial's argument is based on article I, section 19 of the Indiana Constitution, which declares that "In all criminal cases whatever, the jury shall have the right to determine the law and the facts." An instruction like the one in question invades the constitutional province of the jury in a criminal trial, so argues Starke Memorial. They assert that no invasion occurs when the case is civil, and therefore the holding of *Carter* is not applicable in the civil context.

We feel that Starke Memorial's contention can be resolved without a digression into the nuances of article I, section 19. Neither in *Carter* nor in subsequent cases has the Supreme Court relied upon any constitutional provision in determining that a juror has a right to direct questions toward a witness if he is inspired to do so. In *Carter* the court surveyed authority from other jurisdictions in order to resolve the issue and made no mention of our state constitution. Since the Supreme Court has deemed that a juror cannot be precluded from asking questions, we see no reason to conclude that a juror in a civil case has less of a right to do so than a juror in a criminal case.

Starke Memorial further asserts that even if the instruction was improper, the error was harmless because it did not affect the rights of the Dolezals or the final outcome of the trial below. Rather than an example of harmless error, we find that the case is one of unknown, and of unfortunate, error.

◼ We agree with Starke Memorial that the record does not indicate how the instruction affected the outcome of trial, and since the instruction did not relate directly to the issues being tried it is indeed likely that it had no effect. The problem is that we cannot know. Any prejudice to the appellant is unknown because the juror who is instructed to be silent will not proffer his questions so that they can become part of the record. Thus we cannot ascertain with confidence what impact the instruction had upon the outcome of trial.

The *Carter* court remanded that case for a new trial because the jurors' right to ask questions had been impinged upon. The court remanded the case without a showing of prejudice having been made by the appellant. The court in reaching its decision emphasized that the jurors' right to propound questions should not be encouraged and indeed as a practical matter could present evidentiary problems. Nevertheless, the court found this right to be so important and deserving of protection that it remanded for a new trial without a showing by the appellant that he had actually been prejudiced by the erroneous instruction. We are bound to follow *Carter's* requirement that prejudice is presumed and a new trial is required. Unfortunately, the trial court did not heed that precedent. The court refused the warnings of both counsel that the giving of the instruction was erroneous and reversible error. Because this instruction was given, we must remand a case that appears to have been fully and fairly tried in all other aspects. The appellants base their appeal against the jury's verdict for Starke Memorial solely upon the giving of the instruction. No other error is alleged or argued on appeal. We assume that appellants would have

presented other contentions of error had they existed. Because of the judge's error we must remand for a new trial, a result we consider to be largely meaningless to the facts and issues, a burden on the trial process, but necessary under *Carter.*

For the foregoing reasons, we affirm the judgment on the evidence in favor of Dr. Goode and reverse and remand for new trial on the issue of Starke Memorial's liability.

HOFFMAN, P. J., and STATON, J., concur.