Charles V. AVANT, Jr., Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–8704–CR–415.

Supreme Court of Indiana.

Sept. 14, 1988.

George K. Shields, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Appellant Charles Avant was convicted by a jury of burglary, a class C felony, and theft, a class D felony. Ind.Code §§ 35–43–2–1, 35–43–4–2 (Burns 1985 Repl.). The trial court sentenced him to eight years for the burglary conviction and four years for theft. The jury also found that Avant was an habitual offender, and the court enhanced the burglary sentence by 30 years.

Avant raises four issues on direct appeal:

I. Whether evidence was unlawfully seized and therefore inadmissible;

II. Whether the State established the voluntariness of Avant's confession to render it admissible at trial;

III. Whether the trial court erred in denying Avant's motion for a mistrial after he was made to appear in front of the jury with his mouth taped shut, and

IV. Whether the evidence is sufficient to sustain the convictions.

The evidence shows that around 3:30 a.m. on July 10, 1986, Avant drove his maroon Cadillac to the Hit or Miss Store at Nora Plaza Shopping Center in Indianapolis. He got out, threw a cement block through the front window, entered the store and took some clothes from a rack. Returning to his car, he threw the clothes in the back seat and departed.

At approximately 4 a.m., there were two police radio dispatches within a few seconds of each other. One was an all-points bulletin for an attempted short change at the Shell station at 86th Street and Westfield Boulevard. The dispatcher described the suspect as a black man driving a red or maroon Cadillac. The second dispatch reported the burglary at the clothing store nearby.

Indianapolis Police Officer Garry Moore heard the dispatch concerning the short change attempt along with a report that the suspect was heading south on College Avenue. He observed a black man driving a maroon Cadillac with its headlights off; it was crossing College at 56th Street. Officer Moore followed this vehicle for eight blocks and then pulled it over. He asked the driver, Avant, to exit the vehicle and walk back to the patrol car. Officer Moore informed Avant that he was investigating a short change report. Moore's partner read Avant his *Miranda* rights, while Officer Moore walked back to Avant's car to find the registration. When he shined his flashlight into the car, Moore observed women's clothing lying on the back seat with the tags still intact.

Officer Moore radioed his control operator and learned of the earlier burglary. The burglary report had only been dispatched on Marion County's radio system, so Officer Moore had not heard it. He held Avant and the clothing until sheriff's deputies from Marion County arrived. Deputy Donald Scott, who had investigated the burglary, identified the clothing as similar to that which he had found lying on the floor of the Hit or Miss Store. The deputies arrested Avant and took him to jail.

At the jail, Detective Sergeant Michael Waters read Avant his *Miranda* rights and explained them to him. Avant signed a waiver and proceeded to describe to Waters how he burglarized the store. When Wa-

ters asked if he could tape the confession or have someone transcribe it, Avant refused to speak any further.

## I. Search and Seizure

■ Avant argues that the trial court should have suppressed the women's clothing which Officer Moore found in his car. He contends that the officer did not have probable cause to stop his vehicle or conduct a warrantless search. He claims that he was stopped only for driving without turning on his headlights. Officer Moore was not justified in looking in Avant's vehicle, he says, because Moore could not have found any evidence in the vehicle to incriminate Avant for driving without headlights.

Avant is wrong. Officer Moore stopped Avant primarily because he was on the lookout for the suspect in the incident at the Shell station. Avant fit the description of that suspect and he was driving in the general vicinity of the reported suspect. The fact that Avant was driving around in the dark without turning on his headlights merely added to Officer Moore's suspicion. Actually, it later appeared that the report concerning the Shell short change was erroneous, but that does not reflect on the totality of facts available to the officer when he decided to stop the vehicle.

■ Once an officer properly stops a vehicle, merely looking through the vehicle to see that which is inside is not a search. Officer Moore did not have to pick up, open up, or pull back anything in order to discover the clothes lying on top of the back seat. That which is in plain view is not the product of a search. *United States v. Barone*, 330 F.2d 543 (2d Cir.1964), *cert. denied*, 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053.

The facts in the case at bar are similar to those in *Cheeks v. State* (1977), 266 Ind. 190, 361 N.E.2d 906. In *Cheeks*, the officer had knowledge of a recent burglary and stopped a car fitting the general description. When he approached the vehicle, he shined a flashlight in the back seat and observed a woman's purse, one of the items reported stolen at the burglary. This Court held that the purse was in open view and therefore its discovery was not the product of a search in the constitutional sense. *Id.* at 194, 361 N.E.2d at 909.

If the officer's observations would not have constituted a search in daylight, the use of a flashlight, "to pierce the nighttime darkness does not transform his observations into a search.... The plain view rule does not go into hibernation at sunset." *Marshall v. United States*, 422 F.2d 185, 189 (5th Cir.1970); *see also United States v. Lee*, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927) (cases of liquor discovered when searchlight shined on boat were not the product of search prohibited by constitution).

In this case, Officer Moore saw the clothing in plain view. It was therefore not the product of a search within the meaning of the Fourth Amendment and need not be suppressed.

## II. Voluntariness of the Confession

■ Avant argues that the trial court erred in allowing Detective Waters to testify concerning Avant's confession. He claims that the State did not prove that he voluntarily waived his rights and confessed.

This Court reviews the voluntariness of a confession as we do other sufficiency matters. Examining the totality of the circumstances, we determine only whether there was substantial probative evidence to support the trial court's finding. *Ball v. State* (1981), 275 Ind. 617, 419 N.E.2d 137. Ultimately, admissibility of a confession depends upon questions of fact which are best resolved at the trial court level. *Chandler v. State* (1981), 275 Ind. 624, 419 N.E.2d 142.

Detective Waters testified that he read the *Miranda* rights to Avant and explained the waiver form to him. Avant understands and reads the English language. After he signed the waiver, he confessed. That the confession was neither taped nor transcribed affects the weight of the evidence and does not bar its admission.

There was sufficient evidence that Avant's confession was voluntary.

### III. Mistrial

■ Avant claims that the trial court erred in denying his motion for mistrial when he appeared in front of the jury with his mouth taped shut.

After the State's first witness testified, Avant became upset and disrupted the trial proceedings. He complained that his attorney had not sufficiently questioned the witness and requested a new attorney. Avant refused to remain quiet. Judge Gifford excused the jury and again asked Avant to remain quiet.

COURT: Mr. Avant, we are going to proceed with this trial today. I have warned you once and I'm giving you your second warning.

AVANT: I'm facing thirty-eight years and you just want me to be—

COURT: Forty-two.

AVANT: Forty-two years and you want me just be quiet?

COURT: You will either remain quiet or I will have you gagged and tied to the chair.

AVANT: I think that's what you gonna' have to do because I'm not gonna' sit here and let you give me no forty-two years like—like my life ain't nothing.

Following a short recess, Avant again interrupted the proceedings in the jury's presence. The judge excused the jury.

COURT: I would presume, Mr. Avant, that your choice is that you have chosen not to remain quiet during this trial, is that correct?

AVANT: As long as my lawyer is not going to represent me properly, I want another lawyer.

COURT: I want a straight answer. Are you going to remain quiet or are you going to continue with the outbursts?

AVANT: What questions that my lawyer don't ask of them, I'm going to ask my-self. As a matter of fact, I want a chance to put in for a co-counsel.

COURT: Are you going to remain quiet or are you going to continue to disrupt this trial?

AVANT: If I—you might just as well give me the forty-two years if you want me to just sit up in here and let every-body—

COURT: You're working real hard on getting it. I'll tell you that much.

AVANT: I know it. If she ain't gonna' be on there a good two minutes, you got a time limit that you all suppose to have me convicted?

COURT: Okay. I would instruct the deputies to take the defendant out and tape your mouth shut and we will continue this trial today. Court is in recess.

Despite the fact that his mouth was taped shut, Avant managed to disrupt the proceedings again on two occasions. The judge told Avant that if he was willing to be silent except to talk to his attorney for the rest of the trial, she would have the tape removed. He indicated that he would not stay silent and his mouth remained taped shut for the duration of the trial. It also appears that his hands were tied to keep him from removing the tape.

■ These extreme measures should only be used as a last resort after examining all the alternatives.[1] A defendant has a right to appear in front of the jury free from physical restraint, unless such restraint is required to maintain security and order in the courtroom. *Lucas v. State* (1986), Ind., 499 N.E.2d 1090. The trial court has discretion in such matters, and we will only find error where the judge clearly abuses that discretion. *Smith v. State* (1985), Ind., 475 N.E.2d 27.

■ Avant's disruptions created sufficient provocation to justify the use of physical restraint. By his refusal to cooperate and remain civil, Avant forced the trial

---

1. The United States Supreme Court has found "at least three constitutionally permissible ways for a trial judge to handle an obstreperous defendant like [Avant]: (1) bind and gag him, thereby keeping him present; (2) cite him for contempt; (3) take him out of the courtroom until he promises to conduct himself properly." *Illinois v. Allen,* 397 U.S. 337, 343–344, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353, 359 (1970).

**78**

judge to employ means necessary to maintain control of her courtroom in order that the trial proceed. Judge Gifford was justified in employing extreme measures to deal with an extremely recalcitrant defendant. A defendant who creates his own cause for mistrial presents no error.

### IV. Sufficiency of the Evidence

 Avant claims the evidence was insufficient to prove the essential elements of the crimes. He contends that the State merely proved that someone burglarized the clothing store and that he merely possessed the stolen merchandise.

Officer Moore found the stolen clothes on the back seat in Avant's car. Avant confessed that he stole the goods during the burglary, describing his actions in detail. This was sufficient evidence to sustain the convictions.

The judgment of the trial court is affirmed.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.