ATTORNEY FOR APPELLANT
Kristin Mulholland
Office of the Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE
Gregory F. Zoeller
Attorney General

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

## In the
## Indiana Supreme Court

**FILED**

Jul 25 2012, 11:02 am

CLERK
of the supreme court,
court of appeals and
tax court

No. 45S05-1112-CR-684

KENNETH DWAYNE VAUGHN,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below),*

Appeal from the Lake Superior Court, Cause No. 45G04-0809-FC-00124
The Honorable Thomas P. Stefaniak, Jr., Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 45A05-1102-CR-57

**July 25, 2012**

**David, Justice.**

This case involves a trial court's discretion in granting a mistrial. Defendant vacillated back and forth throughout the trial seeking to proceed pro se and at other times wanting court-appointed counsel. Ultimately, the relationship between defendant and his counsel reached its low point when later in the trial defendant testified. After being non-responsive to the first question his counsel asked, defendant began to complain to the jury about his counsel's trial strategy. Defendant's response to counsel's question was also irrelevant and risked a mistrial.

Within a matter of a few moments, the judge had instructed the defendant four times to stop speaking before directing the jury to be removed from the courtroom. Before the jury left the courtroom, the judge directed the bailiff to cover the defendant's mouth so that the defendant would stop talking. Later, after the defendant had calmed down and expressed his willingness to follow the judge's direction, the jury was brought back into the courtroom, and defendant completed his direct and cross-examinations without incident. Only after defendant completed his testimony did defense counsel move for a mistrial. The trial court refused to grant a mistrial. Because we find the defendant did not suffer actual harm from the bailiff restraining him, we affirm the trial court's decision.

**Facts and Procedural History**

On September 5, 2008, Tyaisha Gardner was working as a teller for the Fifth Third Bank in Merrillville, Indiana, when a gentleman approached the counter, stating he wanted to open an account. The individual dropped a plastic bag on the counter and, in a threatening voice, told Gardner to "fill it up." Gardner was afraid the man had a gun due to his movements and keeping his arm at his side. Gardner filled the bag with money, including a stack of "bait" money and pressed the security button under the counter.

Police were notified of the bank robbery and a description of the vehicle in which the bank robber fled. Officer Daniel Veschak quickly noticed a vehicle that matched the description and began to follow it. Officer Veschak activated his emergency lights, which prompted the other vehicle to accelerate. A high-speed chase ensued. After running several stop signs in the chase, the driver slowed down and bailed out of the vehicle, crashing the vehicle into a building. The driver fled on foot. Police apprehended the driver, Kenneth Dwayne Vaughn, who had a large amount of money on him, including some of the bank's "bait" money.

When police inventoried the vehicle, they identified even more money in the vehicle as well as a plastic bag. Officer Veschak identified Vaughn as the person who fled the vehicle. Gardner and fellow bank teller Jennifer Wilcox identified Vaughn as the bank robber.

2

Vaughn was charged with robbery, theft, and two counts of resisting law enforcement. Prior to trial, Vaughn vacillated between proceeding pro se and having his court-appointed counsel represent him. The trial court described Vaughn as "flimflamming back and forth."

It is important to look at the entirety of Vaughn's case to provide context for the events leading up to the request for mistrial. The court convened on October 31, 2008. The first order of business that day was to address defendant's motion to proceed without counsel. Vaughn's counsel addressed the court and acknowledged his frustration, stating, "Mr. Vaughn some months ago elected to proceed pro se and the Court just last week appointed me back to the case after he indicated he wanted counsel." Vaughn's desire to proceed pro se apparently stemmed from a disagreement in trial strategy involving a witness, Maurice Burge.[1] The trial court judge was frustrated, speaking to Vaughn, "first you want [counsel] and then you don't . . . . Then you don't. And then you do want him . . . . And then now the Friday before trial you say you don't want him. And then here we are the morning of trial and you do want him."

The conversation between the trial court judge and Vaughn continued, with Vaughn wanting assistance only in picking a jury, yet wanting to proceed pro se during the trial. Then the trial judge and Vaughn had the following dialogue:

> THE COURT: All right. Well before you are allowed to proceed pro se, which is certainly your right, Mr. Vaughn, and a right that I want to afford you if that is what it is that you want to do, you have you [sic] to be very clear of what you want to do. And so far you haven't been clear. You keep changing your mind back and forward. So what I need for you to do is I need for you to make a final decision as to how you want to proceed this morning with your trial.
>
> BY THE DEFENDANT: I want to proceed pro se.

Vaughn then said he understood that by proceeding pro se he would receive no assistance in jury selection. The trial court next went into a narrative of various rights Vaughn had and various penalties if he would be found guilty of his crime. Vaughn then asked the trial court for a brief break to speak with his counsel. After taking a ten-minute recess, the court reconvened, and Vaughn informed the court he wished to proceed with representation by counsel.

---

[1] Vaughn believed Burge would be a valuable witness for his defense. Counsel believed Burge would hurt the defense as Burge was a victim of a previous crime committed by Vaughn, and Burge could not provide the alibi identification that Vaughn believed he would.

3

After finalizing Vaughn's decision to proceed with counsel, the court began its business, going through pretrial motions, discussing the scheduling of the trial, and finally selecting the jury. When the trial resumed on November 5, 2008, prior to the State's first witness, defense counsel notified the court that yet again Vaughn wished to proceed pro se. Vaughn's counsel stated, "[a]fter speaking with my client here, apparently he is entertaining notions of going pro se. So I know we have been back and forth with that before, but I think it is my duty to advise the Court." The trial court and Vaughn again held a lengthy discussion, before ultimately the trial court denying his request, stating,

> The defendant's request to proceed pro say [sic] is denied because the defendant has not made an unequivocal decision to proceed pro se and in fact, he changes his mind on a repetitive basis. The Court does not know what his motivations for doing that are, however, it is my personal feeling and belief, having done this for a number of years, involved in the criminal justice system that if I allowed him to proceed pro se today, tomorrow he will come in and tell me that he wants his lawyer back. Also, in his motion filed October 31, he did not make an unequivocal motion to proceed pro se, because in that motion, he indicated that he wanted somebody to help him with jury selection. Bring in the jury.

Following lunch that day, the judge found a written motion to proceed pro se that Vaughn placed on the judge's chair, without knowledge of his defense counsel. The trial court judge notified counsel and then read it into the record,

> Comes now the defendant, Kenneth Vaughn, and motions this Honorable Court of Lake County to allow him to proceed pro se. I know that I pulled out my last motion, but I didn't know what I know now. Maurice Burge, a witness in this case, was going to testify on my behalf and says that my public defender, Noah Holcomb, approached him prior to the start of my jury selection and tried to persuade him to leave. Mr. Burge states that Mr. Holcomb called him "crazy" and tried to tell him not to testify on my behalf because of past events. Mr. Burge testified against me in 2006, he was the victim of the crime I was convicted on [sic]. He says Mr. Holcomb told him he shouldn't testify for me because I tried to kill him. Mr. Holcomb also got into verbal disagreement with me because I asked him why he didn't give an opening statement and he told me, "I'm not paying him, so I can't tell him how to fight this case." I really do mean this when I say I'm not comfortable with Mr. Holcomb being my attorney. Please grant me this Motion as a citizen of the United States. I have the right to cross examine any and every witness that the State may won't [sic] to have present to testify against me and I elect to act on that right, because it's not a privilege, it's a right that I have. Sorry for the inconvenience, but I won't [sic] to finish this trial on my on [sic].

4

The record reflects this was again a difference in trial strategy. Vaughn informed the court he wanted questions asked on cross-examination of previous witnesses, and Vaughn's counsel clearly felt such questions would potentially incriminate Vaughn or be improper strategy.

The trial court again denied this motion. Defense counsel then noted to the trial court that Vaughn placed a white envelope on the counsel's desk marked "Indiana Supreme Court Disciplinary Commission" that Vaughn "refuse[d] to let [counsel] pick up from the table." Without objection from anyone, the trial proceeded without further incident that day.

During defendant's case-in-chief, Vaughn was the only witness called. Following lunch on the third day of trial, Vaughn's counsel informed the Court,

> BY MR. HOLCOMB: Your Honor, during our conference between me and my client, my client indicates that he does not want me to argue for any kind of a lesser included. Concede the issue of identify [sic] and solely concentrate on the issue whether or not force or threat of force or fear was used in this incident. And he insists that I focus on the issue of identity alone. I believe that to be contrary to his best interest. But, of course, he is the defendant. I am just pointing that out and making a record of that. So that apparently is what happened.
>
> THE COURT: Okay. Go ahead, Mr. Vaughn.
>
> BY THE DEFENDANT: If you want to make a record or something, are you going to make a record that, that bait money, that is just a picture. They didn't videotape any money coming out of my pocket. They could have went and got that money from the bank and sat it on the table and photographed it. I asked you to argue that. Did you want to argue that? Did you want to argue that the lady said that the man had a beard? Did you want to argue any of the other things I had? But you want to argue that I did something. That is what you want to argue, trying to railroad me. I asked you not to be on this case. I asked the Judge to take you off this case. And you have totally violated my rights to have a fair trial and to be presented fairly by someone who wants to see the truth come out, not someone who told me I am guilty. You told me I am guilty. How are you going to tell me what I have done?
>
> BY MR. HOLCOMB: I am ready for the jury now, Your Honor.
>
> BY THE DEFENDANT: I am, too.
>
> THE COURT: All right. Bring the jury in.

5

The first question Vaughn was asked by his counsel was, "[a]nd, Mr. Vaughn, do you have anything to say to the jury with regards to what led to these charges being filed against you?" Vaughn's answer was, "What I want to say is that ah – I ask you to argue something and you didn't argue it." The court immediately attempted to get Vaughn to stop speaking; the record reflects the judge instructed Vaughn to be quiet four times. The court ordered the jury out of the courtroom, and the bailiff briefly placed his hand over Vaughn's mouth in an attempt to quiet Vaughn.

With the jury outside the courtroom, after dialogue between Vaughn and the trial judge, Vaughn eventually agreed to act appropriately and only respond to the questions asked. Vaughn testified. After he testified, and outside the presence of the jury, defense counsel moved for a mistrial due to Vaughn being restrained in the presence of the jury. The trial court denied the motion for mistrial, and a jury subsequently found Vaughn guilty on all counts. A divided panel of the Court of Appeals reversed and remanded, holding the trial court abused its discretion in denying Vaughn's motion for mistrial. Vaughn v. State, 954 N.E.2d 482, 489 (Ind. Ct. App. 2011).

### Vaughn's Motion for Mistrial

The decision to grant or deny a mistrial motion is left to the sound discretion of the trial court. Taylor v. State, 587 N.E.2d 1293, 1299 (Ind. 1992). We will reverse the trial court's determination on the issue only for an abuse of discretion. McManus v. State, 814 N.E.2d 253, 260 (Ind. 2004). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. Kirby v. State, 774 N.E.2d 523, 534 (Ind. Ct. App. 2002), trans. denied. We afford great deference to the trial court because it is in the best position to gauge the circumstances and impact on the jury. Taylor, 587 N.E.2d at 1299. "[T]he declaration of a mistrial is an extreme action and is warranted only when no other action can be expected to remedy the situation." Bedwell v. State, 481 N.E.2d 1090, 1093 (Ind. 1985).

The sole issue raised by defendant is whether a mistrial should have been granted because the bailiff, at the direction of the trial court, placed his hands over Vaughn's mouth in front of the jury.

The trial court has a duty "to manage the proceedings and take responsible steps to ensure that proper discipline and order exist in the courtroom." Mengon v. State, 505 N.E.2d 788, 792 (Ind. 1987). However, that distinction is not without limitation. The trial court does not abuse its discretion in denying a mistrial motion where the defendant is placed in restraints in front of the jury unless the defendant demonstrates actual harm. Kocielko v. State, 938 N.E.2d 243, 252 (Ind. Ct. App. 2010) trans. denied. Thus, the issue is whether Vaughn suffered actual harm.

The exact transcript of the incident is as follows:

Q. And, Mr. Vaughn, do you have anything to say to the jury with regards to what led to these charges being filed against you?

A. What I want to say is that ah – I ask you to argue something and you didn't argue it.

THE COURT: Hold on a second.

THE WITNESS: I asked him –

THE COURT: Stop.

THE WITNESS: To tell you about –

THE COURT: Stop.

THE WITNESS: To tell you about this photograph.

THE COURT: I told you to stop. Ladies and gentlemen, retire to the jury room. Remove him from the courtroom.

WHEREUPON THE JURY RETIRED TO THE JURY ROOM.

THE WITNESS: He don't [sic] want to tell you.

THE COURT: Remove him from the courtroom. Cover his mouth.

Vaughn was visibly restrained in front of the jury with the bailiff covering his mouth.

We note that upon the jury returning to the courtroom, the judge had the following conversation with the defendant:

All right. At the break, Mr. Holcomb, you asked a question, the answer was non responsive, the Court felt it necessary to stop the testimony as to the non responsive nature of the question. The Court has explained the expectations of

7

what it has for the defendant at the break. Mr. Holcomb, will you ask your question again, please.

In our view, that was not an inappropriate response for the trial court judge to have this discussion with the defendant, both acknowledging the incident but trying to minimize any prejudicial impact on the jury.

The issue is whether the defendant suffered actual harm. We would first note that defense counsel did not immediately move for a mistrial once the jury was excused but waited until after defendant finished testifying. In ruling against granting the mistrial, the trial court stated,

> The Court has had an opportunity to view the defendant and the defendant's positions throughout this entire case since it was filed. What occurred on the stand was something that I believe that the defendant knew was not acceptable and was something that was being done by the defendant in what prior to that event occurring the Court had already concluded that the defendant is trying to somehow create error, appealable error, reversible error, or a mistrial in this cause even though he filed a Motion for a Speedy Trial.

> When the defendant started to give a non responsive answer to Mr. Holcomb's very clearly open ended question, which invited the defendant to give his version of the events, as I recall the situation, I told him to be quiet or something to that effect and thereafter, I think I might have even told him to shut up. But at least on two occasions I believe that I had tried to stop the proceedings to bring them back into order.

> At the point that it became clear to me that the defendant was not going to stop talking, I called the court staff in. Immediately upon Mr. Kelley coming into the courtroom, as I observed, Mr. Kelly then told him to be quiet at least once, maybe another time, at which point he did not stop talking. At which point I believe I commanded Mr. Kelley to put his hand over the defendant's mouth.

> That situation is an unfortunate situation and something that I never intended to have occur in front of this jury. But nevertheless based on what I observed, I don't feel that this Court caused that to occur.

> This Court, from the very beginning of this case, has gone way out of its way to allow Mr. Vaughn the opportunity to talk, to express his opinions on things, and I have tried, even though it is not really my job and may be something I ought not to do in most situations, but I try to intervene between the attorney/client privilege in an effort to somehow try to make that attorney/client relationship somewhat better or make an attempt to explain to Mr. Vaughn the proceedings and the different things that were going on with his case and how things were.

8

So having said all of that, while it was an unfortunate situation that occurred before the jury, it is not something that this Court caused. And the Motion for Mistrial is denied.

A defendant certainly has the right to appear in front of a jury without physical restraints, unless necessary to prevent the defendant's escape, protect those in the courtroom, or maintain order during the trial. Wrinkles v. State, 749 N.E.2d 1179, 1193 (Ind. 2001). Whenever a defendant is placed in restraints in front of the jury, the trial court shall make a statement on the record concerning the reasons. Kocielko, 938 N.E.2d at 252.

In this case the defendant did not appear in front of the jury with restraints, nor was he placed in restraints. However, he was briefly restrained by the bailiff placing his hands over Vaughn's mouth. Hindsight is twenty-twenty, but we believe the better practice would have been to warn the defendant that if he did not stop talking then he would be prevented from talking. Here, no such warning was given.

It appears there was no bailiff or security officer in the courtroom when defendant took the witness stand. The better practice would be to have security in the courtroom, particularly where an uncooperative defendant has already been identified. Since the defendant and his counsel's relationship had been less than favorable since before the trial started, perhaps the trial judge should have considered establishing on the record and outside the presence of the jury the rules or expectations for the defendant's behavior in front of the jury. The trial judge could have made clear to him the potential consequences the judge was prepared to impose if necessary to control the defendant's conduct in the courtroom.

Here, while we believe that the trial court judge did not handle the situation in a manner as we might have liked it to be handled, we find that there was no actual harm to the defendant. We find no actual harm because the incident was so brief, taking place in literally just a few moments. The bailiff only briefly placed his hand over the defendant's mouth, and the jury was quickly taken out of the courtroom. The incident was so minor, in fact, that counsel did not immediately object, only raising the objection after defendant concluded his testimony. Furthermore, defendant neither objected when he was brought back into the courtroom nor objected shortly thereafter following the trial court's conversation with him. We find no actual harm given the facts before us.

As the United States Supreme Court noted, "It would degrade our country and our judicial system to permit our courts to be bullied, insulted, and humiliated and their orderly progress thwarted and obstructed by defendants brought before them charged with crimes." Illinois v. Allen, 397 U.S. 337, 346 (1970). We believe the record indicates this is the type of behavior Vaughn was engaged in, which should not be rewarded. It was his own behavior throughout the trial that showed a disregard for the procedure of our trial courts, vacillating from his desire to proceed pro se and his desire to be represented. And it was Vaughn who did not directly respond to his counsel's question, and continued to speak, when being ordered by the trial judge to stop.

We have looked at a similar issue before. In Avant v. State, 528 N.E.2d 74, 77 (Ind. 1988), the defendant was upset and unruly during the trial, complaining about the trial strategy and performance of his counsel. After excusing the jury, and the defendant refusing to remain quiet, the judge had tape placed over the defendant's mouth and his hands tied. This remained throughout the rest of the trial. This Court then wrote that the defendant's own actions led to the appropriate remedy, and that the judge "was justified in employing extreme measures to deal with an extremely recalcitrant defendant." Id. at 77–78. This court concluded, "[a] defendant who creates his own cause for mistrial presents no error." Id.

Finally, we agree with Judge Friedlander's dissent that Vaughn's actions led both the trial court and defense counsel to believe he was attempting to declare a mistrial. As the trial court judge said to Vaughn once the jury was removed from the courtroom following the incident, "I think you're trying to intentionally cause a mistrial, Mr. Vaughn. And you have been since the beginning. I have been patient with you, but I am not going to let you make a mockery out [of] this system, which is exactly what you're trying to do." And earlier in the trial, when discussing Vaughn's motion to proceed pro se, defense counsel stated, "I still have my job to do and I have my professional reputation to uphold. So it will not bother me one way or the other. What I surmise here is Mr. Vaughn is doing his best to create reversible error[.]" As the dissent noted, "[t]he administration of criminal justice is not to be delivered into the hands of those who gain only from its subversion." Vaughn, 954 N.E.2d at 493 (Friedlander, J., dissenting) (citing State v. Guy, 483 P.2d 1323, 1324 (N.M. Ct. App. 1971)).

10

Vaughn was no stranger to the criminal justice system. In one of his pro se motions earlier in the case, he indicated he was familiar with trial procedures from having represented himself in 2006. He lost the trial, but he stated he learned from his mistakes. Vaughn stated during his incarceration he read up on trial procedure and now knows what he did wrong and will no longer make those same mistakes. It is clear to us he knew his way around the criminal justice system and had the knowledge to attempt to create his own mistrial.

**Conclusion**

A defendant has the right to appear in front of a jury without any physical restraints. However, a trial court judge also has the responsibility of managing the proceedings so proper order exists in the courtroom. While there may have been other options the judge could have exercised to prevent the necessity of ordering the bailiff to put his hand over the defendant's mouth, the judge's decision was not an abuse of discretion in denying the motion for mistrial. We find no harm was done, and affirm the trial court.

Dickson, C.J., and Rucker and Massa, JJ., concur.

Sullivan, J., dissents, believing the decision of the Court of Appeals to have been correct.