Earl **TAYLOR**, Appellant,

v.

**STATE of Indiana, Appellee.**

No. 84S00–8901–CR–10.

Supreme Court of Indiana.

March 6, 1992.

Rehearing Denied May 7, 1992.

1294

Eric M. Abel, Vigo County Sp. Public Defender, Richard E. Coleson, Terre Haute, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder for which he received a sentence of sixty (60) years.

The facts are: On October 4, 1987, Mindy Taylor's body was recovered from the driver's side of her Pontiac Fiero which was submerged in a lake in Terre Haute, Indiana. An autopsy revealed that the victim had died of drowning, and that there were no signs of a struggle to escape the car, nor were there any injuries.

Shortly after the victim's death, appellant, her husband, made a statement to the police. In his statement, he indicated that the victim had difficulty sleeping that night, and at her suggestion, they had gone for a drive at about 3:00 a.m. Appellant stated that the victim swerved the car to avoid hitting a raccoon which was crossing the road in front of them. The car left the road and began to submerge in the lake.

Appellant stated that the victim was unconscious, and he was unable to rouse her. After the car filled with water, appellant opened the passenger door and escaped but was unable to get the victim out of the car. Appellant then ran to a nearby house to summon help.

An investigation revealed that the seat on the driver's side was too far back for the victim to have driven the car. The victim's arms were under the seat belt, and the seat belt was fastened in the wrong receptacle.

From the time of his wife's death, appellant received the advice of counsel regarding the possibility of charges being brought against him for her murder. The day prior to appellant's arrest he made arrangements with a friend, Oscar Brosey, to help move some of his possessions into storage. The next day, December 3, 1987, while moving things in Brosey's pickup truck, appellant was arrested for his wife's murder.

Brosey testified that appellant phoned him from jail. During one telephone conversation appellant indicated that he had signed a release for his keys, and he wanted Brosey to retrieve them. Appellant also wanted Brosey to feed his pets and to remove certain items from his home for safekeeping. During another telephone conversation, appellant asked Brosey to remove a file cabinet from his garage.

Brosey did pick up the keys and remove items from appellant's house. Appellant's file cabinet was unlocked when Brosey found it. Brosey removed the drawers and loaded them and the cabinet into his pickup truck. Brosey returned home, parked the truck in front of his house and left the cabinet and drawers there overnight.

On December 4, police officers obtained a search warrant for appellant's home. The officers drove to Brosey's home, and informed him that they had a search warrant for appellant's home. They indicated that they knew that Brosey had the keys to appellant's home and asked his permission to use the keys in order to execute the search warrant. Brosey gave the keys to the officers. Later that day, the police officers phoned Brosey to inform him that they had completed their search of appellant's home and asked if Brosey wanted them to return the keys or if Brosey wanted to retrieve them at appellant's house.

Brosey drove his truck to appellant's house to retrieve the keys. The officers

asked Brosey if anything had been removed from appellant's home. Brosey indicated which items had been removed, including the file cabinet and drawers. The officers asked Brosey if they could take a look at the cabinet and drawers in Brosey's truck, to which Brosey agreed. The officers indicated that they wanted to look at the papers, but because of the volume of the paperwork they would need to take the cabinet "downtown." Brosey agreed to the seizure of the file cabinet and drawers from his truck.

The officers later phoned Brosey to tell him they had examined the contents of the file cabinet and that he could retrieve them at that time. Brosey informed the officers that appellant's mother was now in possession of appellant's keys and was taking care of appellant's personal things.

Appellant argues that the trial court erred when it admitted in evidence documents seized by the police after Brosey's consent because, he argues, Brosey could not give a valid consent to the search and seizure. The evidence offered by the State was a series of documents relating to insurance coverage on the victim naming appellant as the beneficiary.

[1] Generally, a search may only be conducted pursuant to a lawful warrant authorizing it. However, one exception obviating the necessity of a warrant is valid consent. *Harper v. State* (1985), Ind., 474 N.E.2d 508.

[2] In order to establish the validity of a warrantless search when a person consenting to the search is not in custody, the State is only required to demonstrate that the consent was voluntarily given and was not the result of duress or coercion. *Hines v. State* (1987), Ind., 514 N.E.2d 296. The record made during the hearing on appellant's motion to suppress the documents seized from the file cabinet indicates that Brosey's consent to search his truck in fact was given voluntarily. Brosey testified that he was neither threatened nor intimidated by the officers.

[3] Appellant attacks the validity of Brosey's consent on the grounds that he

instructed Brosey and his wife not to leave the cabinet on the truck, but rather, to place the cabinet in their basement and to lock it. Appellant concedes that he never directly told Brosey not to look in the files, nor did he tell Brosey to prevent others from doing so. Appellant argues now that although he gave Brosey access to his possessions, Brosey did not have the authority to allow the officers to seize the file cabinet from his truck.

The trial court denied appellant's motion to suppress the documents seized. The State relied upon *United States v. Sellers* (4th Cir.1981), 667 F.2d 1123, for the admissibility of the documents. The *Sellers* case holds that:

"[V]alid third-party consent to a search may be given by one who 'shares with the absent target of the search a common authority over, general access to, or mutual use of the place or object sought to be inspected under circumstances that make it reasonable to believe that the third person has the right to permit the inspection in his own right and that the absent target has assumed the risk that the third person may grant this permission to others.' [Citations omitted]. Moreover, whenever one 'knowingly exposes his activities [or effects] to third parties, he surrenders Fourth Amendment protections' in favor of such activities or effects. [citations omitted.]" *Id.* at 1126.

Appellant argues that the *Sellers* case supports his contention that the documents are inadmissible. We disagree.

The United States District Court for the Northern District of Indiana followed this principle of law in the case of *DeRochemont v. Commissioner–I.R.S.* (N.D.Ind. 1986), 628 F.Supp. 957, 962 where the court stated:

"The plaintiff proclaims his subjective expectation of privacy. However, the totality of the circumstances are not consistent with an expectation of privacy. The boxes were placed in the basement of a furniture store. The plaintiff does not allege to have had the ability or the right to control access to the premises.

The owner or operator of the store could have permitted a search of the premises including the boxes in the basement without consulting the plaintiff." [Citations omitted.]

In the case of *Bruce v. State* (1978) 268 Ind. 180, 236–37, 375 N.E.2d 1042, 1072–73, *reh'g denied, cert. denied,* 439 U.S. 988, 99 S.Ct. 586, 58 L.Ed.2d 662, this Court stated:

"The premises from which the evidence was obtained in this case was a bedroom occupied by appellant and Mrs. Bruce. The clothing and shells were removed from a dresser and a closet. The keys were removed from appellant's jewelry box. Appellant notes testimony that these places were used exclusively by himself; however, we believe that the trial court was amply justified in finding that Mrs. Bruce 'generally had joint access' to all areas within her own bedroom, including appellant's jewelry box. Appellant's assertion resembles that of the petitioner in *Frazier v. Cupp, supra,* that his cousin, who consented to a search of their shared duffel bag, had permission to use only one compartment therein, [1969], 394 U.S. [731] at 740, 89 S.Ct. [1420] at 1425 [22 L.Ed.2d 684]; and his argument fares no better than Frazier's. See *United States v. Richardson,* (7th Cir.1977), 562 F.2d 476.

Under these circumstances, Brosey certainly had the authority to consent to the search of his truck at the officers' request. It also was reasonable for the officers to believe that Brosey had the right to permit the inspection of the file cabinet contents. Appellant assumed the risk that Brosey might grant permission for the police to inspect the cabinet when he gave Brosey control over his possessions.

■ The State introduced in evidence Exhibit No. 111, which was a handwritten statement by appellant regarding his initial interview with the police. The content of the statement is a description of the events which led to the victim's death and appellant's actions at that time. This document was seized by the police at appellant's residence during the search of appellant's house. Appellant contends the trial court erred when it admitted this exhibit into evidence because appellant wrote the statement for his counsel, Dan Weber; therefore, he argues that the document is inadmissible due to the attorney-client privilege he claims protects the statement.

■ Appellant correctly states the rule of law that communications made by a client to his attorney are confidential and neither the attorney nor his client can be compelled to reveal the contents of such communication. Ind.Code § 34–1–14–5.

The record reveals that appellant did have an attorney-client relationship with Dan Weber, and appellant wrote the incomplete statement regarding the circumstances of his wife's death pursuant to his attorney's request. Appellant testified, however, that although he intended to deliver the statement to his attorney at some point, he had not yet completed the statement because he thought that the matter would go to a grand jury several months later.

At the hearing on appellant's motion to suppress the handwritten statement, the trial court decided that the document was not intended for trial counsel. The trial court had before it the fact that defense counsel had asked for the statement and that appellant said that the sheets of paper were his response to the request. Further, the statement did not contain the name of the proposed receiver, nor did it contain the date that it was written.

Indiana Code § 34–1–14–5 requires that before the attorney-client privilege applies, there must be a communication. Appellant's own testimony at the suppression hearing shows that the statement had not been communicated because it had not been completed. The trial court properly found that the attorney-client privilege did not apply.

Indiana Code § 34–1–14–5 also requires that the communication is confidential. Such is not the case here. The content of the statement was the information given to the police during appellant's initial interview regarding his wife's death. Appellant had provided the police with this informa-

tion voluntarily and the police had transcribed the statement. The State introduced at trial Exhibits No. 17 and No. 18 which consisted of a recording made with appellant's permission of his statement to police, which was admitted without objection, and a transcript of the tape recording which was made a part of the record without objection.

Therefore, the subject matter of the statement was already in evidence. In the present case, the handwritten statement which never was communicated to appellant's counsel did not contain confidential information of the sort which should be protected by the attorney-client privilege. The trial court did not err in admitting the statement into evidence.

Appellant argues that the trial court erred when it denied his motion for a mistrial based upon improper communications with the jury. The trial court granted appellant's motion in limine regarding the bathtub electrocution of appellant's first wife. Appellant also was successful in obtaining the sequestration of the jury due to the risk that publicity regarding the death of appellant's first wife would prevent him from having a fair trial.

During a lunch recess from the trial, seven members of the jury went to the MVP Room at the Boston Connection to eat lunch accompanied by a bailiff. A group of businessmen sat at a table not far from the table of jurors. While the jurors were preparing to order, they could hear some of the conversation at the other table. One of the jurors brought this to the attention of the bailiff who then attempted to quiet the men at the other table. The jurors ultimately left the MVP Room.

When these events came to the attention of the trial court, a hearing was held to determine the extent of what the jurors had overheard, and if they had been unfairly biased by what, if anything, they had overheard. The testimony of the jurors ranged from hearing nothing at all to hearing something about a bathtub, a radio, multiple insurance policies, or the responsibilities of jury duty. Of the jurors who heard parts of what was said, each stated

that they could not be certain the comments had anything to do with the ongoing trial. One juror indicated that he did not think what he heard would impair his ability to continue to sit on the jury; the others indicated they could easily ignore what was overheard.

After hearing the testimony, the trial court denied appellant's motion for a mistrial. The juror who was found to be the most contaminated by the overheard conversation was excused prior to deliberation.

■■■ The granting of a mistrial is an extreme remedy which lies within the discretion of the trial court, and to prevail on appeal, defendant must show that he was so prejudiced that he was placed in a position of grave peril to which he should not have been subjected. *Olson v. State* (1990), Ind., 563 N.E.2d 565; *Kelly v. State* (1990), Ind., 561 N.E.2d 771. The gravity of the peril is determined by considering the probable persuasive effect of the misconduct on the jury's decision, not the degree of impropriety of the conduct. *Gregory v. State* (1989), Ind., 540 N.E.2d 585. The appellant carries the burden of showing that no action other than a mistrial could have remedied the perilous situation into which he was placed. *Id.* The trial court's decision is afforded great deference on appeal, as it is in the best position to gauge the surrounding circumstances of the event and its impact on the jury. *Kelley v. State* (1990), Ind., 555 N.E.2d 140.

■■■ Appellant argues that the tainted juror was removed from the trial too late. The comments by the businessmen were made on July 27, 1988. The tainted juror was removed on August 5, 1988 just prior to the court's submission of the case to the jury. He argues that during the time the juror remained on the jury there undoubtedly was communication of some sort among the jurors about the overheard conversation. He claims his right to a trial by an impartial jury was denied.

After the jury was sworn, the trial court read to the jury its preliminary instructions. Preliminary Instruction No. 3 had to do with the conduct and duty of the jurors.

The trial court specifically instructed the jurors not to discuss the case among themselves or with anyone else during the times when they were outside of the courtroom. Ind.Code § 34-1-21-5 states,

"If the jury are permitted to separate, either during the trial or after the cause is submitted to them, they must be admonished by the court that it is their duty not to converse with each other, or suffer themselves to be addressed by any other person, on any subject of the trial; and during the trial, that it is their duty not to form or express among themselves, an opinion thereon, until the cause is finally submitted to them."

In the present case, the jury was instructed to refrain from discussing the case among themselves until it was submitted to them for deliberation. When the juror was removed, an alternate juror took his place. Appellant has failed to provide us with any evidence which indicates that the jurors discussed the case or the conversation after they were questioned by the court and prior to the time when the case was submitted to them. Absent this showing, we cannot find that appellant was prejudiced by the trial court's choice of curative measures in lieu of declaring a mistrial.

On July 3, 1987, Eric Johnson, a stockbroker, arranged for a man, who identified himself on the telephone as Earl Taylor, the sale of several shares of stock for the victim. On July 17, 1987, a man came to Johnson's office and had in his possession a stock certificate signed by the victim. At that time, an investment account was opened in the victim's name based upon information Johnson received from that man. The information included the victim's social security number, place of employment, position held, home and business phone numbers, and spouse's employment. At the conclusion of the sale, the man asked Johnson about tax-free investments because he expected to be coming into a substantial sum of money. The man did not reveal to Johnson the source of the anticipated sum of money.

The State called Johnson as a witness and questioned him regarding the conversations he had with the man identifying himself as appellant. Johnson was unable to identify appellant in court as the man with whom he had the conversation. At that point, appellant objected to any further testimony from Johnson, and the trial court sustained the objection. Later, the State made an offer to prove regarding the substance of Johnson's testimony, after which the trial court allowed Johnson to testify.

Appellant argues that the State did not lay a proper foundation for Johnson's testimony which authenticated the investment account exhibit. Specifically, appellant argues that Johnson's inability to identify him precludes his testimony and that the trial court erred when Johnson was allowed to testify regarding the conversation and when the exhibit was admitted into evidence.

Johnson's testimony had a direct bearing on the State's theory that appellant murdered his wife for monetary gain. We have held that any evidence which connects the defendant with the crime is admissible. *Jones v. State* (1989), Ind., 536 N.E.2d 267, *reh'g denied*. We also have held that if evidence only inconclusively connects the defendant with the crime, this goes to the weight, not to the admissibility, of the evidence. *Armstrong v. State* (1982), Ind., 429 N.E.2d 647. The trial court is accorded wide latitude in ruling on the relevancy of evidence. *Hubbard v. State* (1987), Ind., 514 N.E.2d 1263.

Here, Johnson's testimony regarding a discussion of future investment of substantial sums of money tended to prove that appellant had a motive to kill his wife. Evidence of motive is relevant in the proof of a crime. *Halbig v. State* (1988), Ind., 525 N.E.2d 288. The admission of evidence having a tendency to create an inference of motive is within the discretion of the trial court. *Id.* There was ample evidence presented by the State which could connect appellant to the murder. Johnson's inability to identify appellant as the person with whom he had the conversation did not render his testimony inadmissi-

ble. *See Bowens v. State* (1985), Ind., 481 N.E.2d 1289.

The pathologist, Dr. Hawley, and the toxicologist, Dr. Evans, testified for the State. The doctors testified that the cause of the victim's death was drowning. However, because the victim's body showed no signs of a struggle they conducted two tests to determine if any toxins, medications, or poisons were present in the victim's body. No suspicious substances were discovered.

The record reveals the State, on direct examination of Dr. Hawley, established that the cause of death was drowning, but that there was no explanation for the victim's non-responsiveness just prior to her death. Appellant then thoroughly cross-examined Hawley regarding the test results and the presence or absence of any toxins in the victim's system. The State, on redirect examination, established that the tests conducted were not exhaustive; therefore, the possibility that toxins were present was not eliminated by the tests performed. Appellant argued that the State was attempting to shift the burden of proof. The trial court overruled appellant's objection. Appellant argues that this was error.

On direct examination of Dr. Evans, the State established that there were many drugs or toxins which could be present in the victim's system which would not be detected by the tests conducted. The State also established that further tests were not conducted in order to preserve the specimens in the event that later testing was necessary. Appellant objected to the testimony claiming that the State was attempting to shift the burden of proof. Appellant also moved to strike Evans' testimony claiming that it concerned a hypothetical situation beyond the facts of the case. The trial court overruled both appellant's objection and his motion. Appellant thoroughly cross-examined Dr. Evans; however, he argues the trial court's rulings against him were error.

■ Appellant argues now that the testimony of both of the doctors was inadmissible and that the trial court erred when it allowed the testimony. However, appellant cites no authority for his contention.

The State cites Ind. Appellate Rule 8.3(A)(7) and argues that appellant has waived this issue due to his failure to cite any authority for his contention. Appellant's failure to cite any authority is a waiver of this issue. *Hunt v. State* (1983), Ind., 455 N.E.2d 307. However, assuming that appellant has not waived the issue, appellant was not harmed by the introduction in evidence of the above mentioned testimony.

■ The burden of proof in a criminal trial never shifts to the defendant; rather, the State must establish beyond a reasonable doubt all of the necessary elements of the crime. *Smith v. State* (1969), 252 Ind. 425, 249 N.E.2d 493. Thus, the burden of proving that appellant somehow drugged the victim rendering her unconscious prior to her death rested with the State. Any potential harm to appellant was cured by the trial court's instructions to the jury. The trial court instructed the jury that the burden of proof rested with the State to prove the elements of the crime charged, that any reasonable doubt must be resolved in favor of the innocence of the accused, and that the defendant did not have to prove or establish his innocence. At that point, it was for the jury to weigh the evidence and determine the credibility of the witnesses.

The defense called Rosetta Melvin to the stand to testify concerning statements made to her by the victim. Melvin would have testified that the victim had told her that she had difficulty sleeping one night approximately a week before her death. According to Melvin the victim said she had awakened at 3:00 a.m. and had been unable to return to sleep. The State objected to the proposed testimony as hearsay. The trial court sustained the State's objection. Appellant argues that the trial court erred because the testimony should have come in evidence under the statements of physical or mental condition exception to the hearsay rule or the state of mind exception to the hearsay rule.

Hearsay is an out-of-court statement offered to prove the truth of the facts asserted therein and thus rests on the credibility of the declarant who is not in court and is unavailable for cross-examination. *Bustamante v. State* (1990), Ind., 557 N.E.2d 1313. If the challenged evidence is hearsay and does not fall within an exception to the hearsay rule, then it is inadmissible. *Id.* We have held that otherwise inadmissible hearsay is admissible when the testimony is not offered for the truth of the matter asserted but to show the victim's state of mind toward the defendant. *Dunaway v. State* (1982), Ind., 440 N.E.2d 682.

Appellant argues that the testimony was relevant because it would have rebutted the evidence presented by the State suggesting the victim's sleeplessness on the night she died was unusual. Appellant's argument that the testimony should have been admitted under this exception fails. Whether testimony concerning prior instances of sleeplessness was relevant, at issue, or indicative of a state of mind, and therefore admissible under the state of mind exception to the hearsay rule was within the discretion of the trial court. *See Dunaway, supra.* We see no abuse of discretion in disallowing the testimony under this exception to the hearsay rule.

Appellant further argues that the testimony should have been admitted under the statement of physical or mental condition exception to the hearsay rule. Appellant cites Tanford & Quinlan, *Indiana Trial Evidence Manual* § 31.1 (2nd ed. 1987), in support of the admissibility of the testimony. However, by appellant's own definition, the statements regarding present physical condition must have been made by an injured person and must relate to the injury.

The statement here was made by the victim to a co-worker regarding an event of sleeplessness. Sleeplessness may or may not be a physical condition, but the victim was not injured. The statement concerned a prior occasion of sleeplessness which the trial court determined was not relevant to the victim's murder. Appellant also cites a California case, *Bloomberg v. Laventhal* (1919) 179 Cal. 616, 178 P. 496, in support of admissibility of the testimony. However, in *Bloomberg,* the plaintiff sought to recover damages for injuries resulting from a battery. His insomnia resulted from the discomfort of his injuries.

We see no error in the trial court's decision not to allow the testimony under this exception to the hearsay rule. Further, even if erroneous, hearsay rulings do not compel reversal in the absence of resulting harm. *Shumaker v. State* (1988), Ind., 523 N.E.2d 1381.

Appellant called defense witness Katie Harden to the stand to testify concerning her panic reaction to a seat belt which had been inserted in the passenger side receptacle of the vehicle she had been driving. The State objected to the testimony, and the trial court did not allow the witness to testify. Appellant made an offer to prove that Harden would testify that when she could not remove her seat belt, she put her hands under the seat belt and attempted to remove it by force. The trial court did not allow Harden's testimony because of the dissimilarity in vehicles and the threat causing the panic reaction. Appellant contends this was error.

Again, the State argues that appellant has waived this issue because he has cited no authority for his contention. *Hunt, supra.* Assuming that appellant has not waived this issue, however, the trial court did not err in excluding the testimony. After hearing appellant's offer to prove, the trial court concluded that the panic reaction experienced by the witness was not of a similar nature to that which would have been experienced by the victim had she been conscious. Appellant had contended that he could not pull the victim from the car because she was unconscious. Furthermore, the trial court ruled that the kind of vehicles and seat belts were dissimilar.

If the offered evidence is only marginally relevant, it is within the sound discretion of the trial court to determine its admissibility. *Ingram v. State* (1989), Ind., 547 N.E.2d 823. Given the dissimilarities be-

tween the proposed testimony and the facts in the case at bar, it was reasonable for the trial court to conclude that the testimony should not be allowed. We see no abuse of that discretion here.

Appellant's next contention is that the trial court erred when it refused to allow a defense expert to testify regarding the length of time the car would have floated in the lake if the car door was open. Appellant further claims that such a ruling demonstrated the court's bias against him.

In his statement to the police, appellant said that after the car entered the lake it sank "like a rock." Appellant stated that his first reaction was to open the door but that he couldn't open the door due to the water pressure. The State had conducted a reconstruction of the incident at the lake. The State's expert testified that nearly three minutes elapsed before the car submerged in the lake.

Appellant's expert testified to calculations and descriptions of the sink rate of the car using different degrees of openness of the car door as a variable. He also testified to the degree of force necessary to open the passenger door. He stated that this testimony was based upon the fact that appellant had made a statement to the police regarding opening the passenger door during the submersion of the car. The State objected to the testimony based on the fact there was no evidence in the record that appellant had opened the door at that time. The trial court sustained the objection and struck the testimony from the record.

■■■■ Admissibility of expert testimony is within the sole discretion of the trial court and reversal is warranted only for abuse of that discretion. *Henson v. State* (1989), Ind., 535 N.E.2d 1189. In the case at bar, the expert testified as to sink rates if the passenger door of the car was open prior to submersion. However, there were no facts in evidence indicating that the door was open at that time. Therefore, the trial court did not abuse its discretion in sustaining the objection and striking the testimony.

■■■■ Appellant's argument that the trial judge displayed bias against him by stating there were no facts in the record to support the expert testimony when he ruled on its admissibility also fails. The law presumes that a judge is unbiased and unprejudiced in matters which come before him. *Beverly v. State* (1989), Ind., 543 N.E.2d 1111. We have held that adverse rulings and findings by a trial judge are not sufficient reasons to believe the judge has a personal bias or prejudice *per se. Id.*

Appellant argues that he was entitled to instructions concerning the lesser-included offenses of involuntary manslaughter, criminal recklessness, and reckless homicide. The State argues that appellant's failure to provide a verbatim copy of the tendered instruction, contrary to Ind. Appellate Rule 8.3(A)(7), is a waiver of this issue. We have held that such an omission is a waiver of the issue. *Norris v. State* (1986), Ind., 498 N.E.2d 1203. However, assuming that appellant has not waived the issue, the trial court did not err by failing to give the proposed instructions.

■■■■ The test applied to review the trial court's decision to give or refuse a tendered instruction is whether the instruction correctly states the law, whether there was evidence on the record to support the giving of the instruction, and whether the substance of the tendered instruction is covered by other instructions which are given. *Phillips v. State* (1990), Ind., 550 N.E.2d 1290. For refusal of an instruction on a lesser offense to be error, evidence must be subject to the interpretation not only that the lesser offense was committed, but that the greater offense was not. *Smedley v. State* (1990), Ind., 561 N.E.2d 776.

■■■ In the case at bar, the theory presented by the defense was that the victim's death was the result of an accident, and that appellant had no intent to kill the victim. The defense presented evidence comporting with that theory. The State presented evidence from which the jury could infer that appellant had the intent to kill the victim and that he in fact did kill the victim. In light of the evidence

presented, the trial court's refusal to instruct the jury regarding the lesser-included offenses of involuntary manslaughter, criminal recklessness, and reckless homicide was proper. *See Underwood v. State* (1989), Ind., 535 N.E.2d 118.

The trial court is affirmed.

SHEPARD, C.J., and KRAHULIK, JJ., concur.

DeBRULER and DICKSON, JJ., concur in result without separate opinion.