**Richard BALLIN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 71A03–9209–CR–296.**

Court of Appeals of Indiana,
Third District.

March 10, 1993.

Transfer Denied May 6, 1993.

---

Charles W. Lahey, South Bend, for appellant-defendant.

Linley E. Pearson, Atty. Gen. of Indiana, Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

GARRARD, Judge.

Richard Ballin was convicted of battery, a class D felony.

FACTS AND PROCEDURAL HISTORY:

Richard Ballin (Ballin) and Karen Shroyer (Shroyer) were involved in a stormy relationship, but were never married. That relationship produced two children and eventually broke up after five years. The children now live with Shroyer and her new boyfriend, Bob Lee.

On December 28, 1991 the two children, Kimberly age 7 and Matthew age 4, were taken by their grandmother to visit Ballin while their grandmother and one of Ballin's

sisters went shopping. After the grandmother and sister left, the children played for a while and then went and sat on Ballin's lap. While the children were on his lap, Ballin asked them who they liked more, Bob Lee or himself. Both children responded "Bob." Kimberly then ran into the kitchen and testified that she saw Ballin light a cigarette, grab Matthew, who was trying to run away, throw Matthew on the couch and burn him with the cigarette. Kimberly testified that Ballin told them not to tell anybody about this.

When the grandmother and Ballin's sister returned to pick up the children an hour or so later, both children seemed happy and produced pictures of their dad that they had drawn. Matthew showed no sign of injury and ran and played as he normally did. Both children expressed a desire to stay with Ballin longer.

Later that evening, when the children were staying with their grandmother, Ballin called and was angry that the children were staying with her. He threatened to come over, break windows, and burn down the house. When Shroyer called to check on the kids, the grandmother told her of Ballin's threats. Shroyer then arranged to come and pick up the children. Shroyer picked up Matthew later that night, but Kimberly spent the night with an aunt. Neither child said anything about Ballin hurting Matthew.

A few days later, when Shroyer was signing papers at the St. Joseph County Welfare office, Kimberly told Shroyer's caseworker what happened. Shroyer testified that Kimberly's revelation was the first that she had heard of this incident. The children were then interviewed by police officers and Matthew was taken to see his family doctor.

A jury trial was held on April 8–9, 1992 and Ballin was found guilty of battery, class D felony.

We affirm.

ISSUES:

Ballin presents four issues on appeal which we restate as follows:

I. Whether the trial court erred in denying Ballin's motion for mistrial when the prosecution improperly asked a witness about Ballin's prior battery conviction.

II. Whether the trial court denied Ballin a fair trial when the trial judge sustained Ballin's objection to an improper question regarding Ballin's continuing child support debt.

III. Whether the trial court erred in admitting testimony, over Ballin's objection, that charges made against Shroyer were unsubstantiated.

IV. Whether the trial court denied Ballin a fair trial when the trial judge allowed a juror to question a witness about the burn marks found on Matthew.

DISCUSSION:

Issue I:

First, Ballin contends that the trial court erred by denying his motion for a mistrial when the prosecution improperly questioned a witness about Ballin's prior battery conviction. We disagree.

The granting of a mistrial is an extreme remedy which lies within the discretion of the trial court. *Taylor v. State* (1992), Ind., 587 N.E.2d 1293, 1299. In order to prevail on appeal the defendant must show that he was so prejudiced that he was placed in a position of grave peril to which he should not have been subjected. *Id.* The gravity of the peril is determined by the probable persuasive effect of the misconduct on the jury's decision, not the degree of impropriety of the conduct. *Id.* The appellant carries the burden of showing that no action other than a mistrial could have remedied the perilous situation into which he was placed. *Id.* The trial court's decision is afforded great deference on appeal, as it is in the best position to gauge the surrounding circumstances of the event and its impact on the jury. *Id.*

During the cross-examination of a prosecution witness by the defense, the witness, Karen Shroyer, stated that her relationship with Ballin was stormy and that he used to beat her. In an attempt to

rehabilitate the witness on re-direct, the prosecution posed the following question:

> Mr. Lahey asked you about your stormy relationship with the defendant, he's been convicted of battery, isn't that right? (R. 172).

Ballin immediately objected and moved for a mistrial. After a side-bar conference with the trial judge, the motion was denied. The question remained unanswered.

In this situation a mistrial was not required. The defense, on cross-examination, was the first to elicit information from Shroyer concerning the stormy nature of her relationship with Ballin including the fact that Ballin had occasionally beat her. The prosecution's question, while improper, merely brings out the same type of information. The probable persuasive effect of this information on the jury was therefore greatly diminished. In addition, the question remained unanswered. The jury was therefore deprived of knowledge concerning the truth of the matter asserted in this question and we will not presume that the jury believed its content. Ballin carried the burden of showing that no action other than a mistrial could remedy his peril. This he did not do. The trial judge did not abuse his discretion in denying Ballin's motion.

Issue II:

■ Ballin next contends that he was denied a fair trial when the trial judge sustained Ballin's objection to an improper question concerning Ballin's continuing child support debt. The full exchange reads as follows:

> Q He's about $9,000 in support arrears—arrears in support is that correct?
>
> A They told me $10,000—
>
> MR. LAHEY: Objection Your Honor.
>
> THE COURT: Sustained.
>
> MR. LAHEY: Move to strike the last question, Your Honor, and instruct the jury.
>
> THE COURT: Well, we can't strike it from the record, ladies and gentlemen of the jury, with respect to Mrs. Miller's last statement and the witness's

response, I'll instruct you that you ought to disregard both. (R. 174–75).

Ballin contends that despite the actions taken by the trial judge, the prejudice inflicted upon him by these remarks denied him a fair trial and requires reversal. We disagree for two reasons.

First, Ballin failed to make a timely objection at trial. A party must make his objection to a question before the answer is given in order to preserve the issue for appeal. *Tinnin v. State* (1981), Ind., 416 N.E.2d 116, 118. The objection in this case was made after Shroyer answered the question.

Second, the trial court sustained the objection made by Ballin and instructed the jury to disregard both the question and the response. An objection that has been sustained generally cannot serve as the basis for argument on appeal. *Harvey v. State* (1989), Ind., 542 N.E.2d 198, 201. In addition, if a jury is admonished by the trial judge to disregard what has occurred at trial, no reversible error will normally be found. *Tinnin, supra* 416 N.E.2d at 118. Ballin presents us with no compelling evidence that would demonstrate the kind of prejudice necessary to overcome these well reasoned rules. We find no error.

Issue III:

Ballin also contends that the trial court erred in admitting, over his objection, evidence that certain charges made against Shroyer were unsubstantiated.

During direct examination of States witness Suzanne Van De Sompele, the prosecutor asked questions regarding complaints lodged against Shroyer for child abuse or neglect. The prosecution asked Van De Sompele the difference between substantiated and unsubstantiated cases. Van De Sompele answered that unsubstantiated complaints are expunged from their records and that only substantiated material is kept. The prosecution then asked the following question:

> Q And are there any substantiated cases involving Karen Shroyer as the perpetrator? (R. 178).

The defense objected immediately on the grounds of hearsay and relevance. After a

side-bar conference, the trial judge overruled the objection and asked the prosecution to proceed. The prosecution did proceed, but did not repeat the question. The question remained unanswered.

On cross-examination, the defense asked Van De Sompele if she had brought Shroyer's files with her. The defense then proceeded to elicit the same testimony that it sought to exclude through its earlier objection. The full exchange reads as follows:

Q  Did you bring those files with you Miss Van De Sompele?

A  There are no files to bring with me.

Q  There's no files?

A  I brought my data along from the records I keep when a case is closed. The cases are unsubstantiated, those files under Indiana law have to be expunged. (R. 181).

■  There can be no error in this case. The trial judge has considerable latitude in the admission or rejection of evidence. *Posey County v. Chamness* (1982), Ind.App., 438 N.E.2d 1041, 1048. The error, if any, must relate to material matter, or be of such character as to substantially affect the rights of the parties. *Id.* The appellant must demonstrate actual prejudice before the error may be grounds for reversal. *Aldridge v. Abram & Hawkins Excavating Co., Inc.* (1985), Ind.App., 474 N.E.2d 107, 109, *trans., denied.*

■  Ballin has not shown how the trial judge's actions in this case are error and, if so, how he was prejudiced. The question objected to was never answered by the witness after the objection was overruled. Merely overruling an objection is not in itself enough to create reversible error. Any error in the trial judge's action must have some prejudicial effect. Where, as here, the question goes unanswered, there can be no prejudice to the objecting party unless it can be shown that the question itself was prejudicial enough to warrant reversal or mistrial. In addition, the defense elicited the same material it sought to exclude. In such a case, there can be no prejudice. Where a party draws out, on cross-examination, the very information it

previously sought to exclude through its objection, there can be no error.

Issue IV:

■  Finally, Ballin contends that he was denied a fair trial when the trial judge allowed a juror to question a witness about the burn marks found on Matthew. Specifically, Ballin contends that IC 35–37–2–3 required the court to examine the juror in question and replace him if the court found that the juror had personal knowledge of any fact material to the cause. We disagree.

First, we note that Ballin made no objection at trial to the way in which the juror's question was handled or presented. A failure to object at trial will preserve no error on appeal. *Whittle v. State* (1989), Ind., 542 N.E.2d 981, 990.

Second, IC 35–37–2–3 does not apply to the facts of this case. IC 35–37–2–3 reads:

(a) As a part of the preliminary instructions, the court shall instruct the jurors that if a juror realizes, during the course of the trial, that he has personal knowledge of any fact material to the cause, he shall inform the bailiff that he believes he has this knowledge at the next recess or upon adjournment, whichever is sooner. The bailiff shall inform the court of the juror's belief, and the court shall examine the juror under oath in the presence of the parties and outside the presence of the other jurors concerning his personal knowledge of any material fact.

(b) If the court finds that the juror has personal knowledge of a material fact, the juror shall be excused and the court shall replace that juror with an alternate. If there is no alternate juror, then the court shall discharge the jury without prejudice, unless the parties agree to submit the cause to the remaining jurors.

The juror in this case questioned the witness, Dr. Tripp, about the possibility of necrosis of the surrounding tissue immediately adjacent to the burn marks found on Matthew. Ballin asserts that the juror's question demonstrates that this juror had particularized knowledge of the medical condition known as necrosis and that this

knowledge was "personal knowledge of any fact material to the cause" within the meaning of the statute. We disagree.

IC 35–37–2–3 applies only to any "fact" material to the cause. The type of "fact" contemplated by the statute generally includes the underlying story and what happened to bring the parties into court, the what-happened or whodunnit of the case. It is not meant to encompass the general knowledge that a juror may bring with him from his life experiences. General knowledge of necrosis as a medical condition therefore cannot be considered a "fact" within the meaning of IC 35–37–2–3.

CONCLUSION:

For the foregoing reasons, the judgment of the trial court is affirmed.

HOFFMAN and CONOVER, JJ., concur.