**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Apr 17 2013, 10:20 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARK I. COX**
The Mark I. Cox Law Office, LLC
Richmond, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KARL M. SCHARNBERG**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAVID MEECE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 89A04-1208-CR-412 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WAYNE CIRCUIT COURT
The Honorable David A. Kolger, Judge
Cause No. 89C01-1111-FB-99

**April 17, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

David Meece appeals his convictions for aggravated battery, a Class B felony, and battery resulting in serious bodily injury, a Class C felony, as well as a habitual-offender enhancement. On appeal, Meece argues that the trial court should have granted his mistrial motions because comments made by a witness, the prosecutor, and the trial court placed him in a position of grave peril. We conclude that the trial court did not err in denying Meece's mistrial motions. We affirm.

**Facts and Procedural History**

Meece began a romantic relationship with Sonya Morrison in 2011. In November 2011, Meece and Sonya got into an argument at Hartman's Market in Richmond. Because Meece was yelling at Sonya and calling her names, she became frightened and left Hartman's Market. She went home and locked all her doors.

Later that day, Sonya was in the kitchen. She looked up to see Meece standing in her hallway. Meece began cursing, calling Sonya names, and striking her. He also threatened to kill her and began choking her with his hands. Sonya escaped and called 911. Authorities arrived at the scene and observed that Sonya's face and neck were bruised and her eyes had swollen shut. Authorities found a naked Meece hiding under Sonya's bed and took him to jail.

Sonya was taken to a nearby hospital. Doctors diagnosed Sonya with an acute intracranial subdural hemorrhage, or bleeding near the brain. Because her injuries were life-threatening, Sonya was transferred to Methodist Hospital in Indianapolis, where she eventually recovered.

The State charged Meece with aggravated battery, a Class B felony, and battery resulting in serious bodily injury, a Class C felony. The State also alleged that Meece was a habitual offender. Before trial, the State filed notice of its intent to introduce evidence of a previous domestic-violence incident between Meece and Sonya that occurred in June 2011. Meece filed a motion to prevent the State's use of this evidence, but the trial court denied Meece's motion.

When Sonya testified, the State asked her about the June 2011 battery, which had required her to be hospitalized:

THE STATE: During the other incident where [Meece] put you in the hospital, what led up to that?

SONYA: Just fighting.

THE STATE: What did he do to you back in June of 2011?

SONYA: I don't know. I was in [an Indianapolis hospital] again. Blunt force trauma, something to my head.

THE STATE: Do you remember – do you remember, what, if anything, he did to you back then?

SONYA: Just – he always pushed me around.

THE STATE: Did he . . . you said blunt force trauma, then you were in the hospital. I'm asking you the question of what happened during that incident with him. What did he do to you?

SONYA: I don't know. We argued so much I can't keep up with it.

\* \* \* \* \*

THE STATE: Do you recall [] Meece striking you in the head?

SONYA: He's done that many [] times.

THE STATE: I'm talking about June.

3

*Id.* at 485-86. Meece's counsel objected to Sonya's statement, saying that she was "making references to repeated incidents," and stating that Sonya had been hospitalized two times in between the June 2011 and November 2011 batteries, once at Reid Hospital in Richmond and later in Indianapolis for a medical condition unrelated to the battery. *Id.* at 487-88. Meece's counsel argued that the jury might believe that Sonya had been hospitalized both times for injuries inflicted by Meece, when there was no evidence that the battery had caused the Indianapolis hospitalization. Counsel argued that no admonishment would resolve the problem and requested a mistrial. *Id.* at 489.

The trial court denied the motion, pointing out that in pretrial conferences, the attorneys had agreed that there would be no mention of Sonya being in a coma—which had occurred in Indianapolis and was apparently unrelated to the June 2011 battery—but they had agreed that Sonya could testify that she had previously been hospitalized. *Id.* at 491. Meece's attorney then clarified that he did not object to testimony about Sonya being hospitalized at Reid Hospital in June 2011—where she was treated for the battery—but objected to any mention of her being hospitalized in Indianapolis. *Id.* The trial court stated that Meece's counsel had not been clear, but that in any event, it was clear that Sonya was only testifying about two domestic-violence incidents involving Meece. *Id.* at 491-92. Sonya finished her testimony without objection from Meece.

Later, Meece took the stand. Throughout his testimony, Meece interrupted and spoke over the attorneys and the trial court. Frequently, the court had to speak over Meece and remind him to speak only when asked a question. *See* Tr. p. 590, 598, 602,

4

605-06, 613, 618.  Meece denied ever hitting Sonya, saying that she simply fell, and at one point suggested that Sonya was drunk during the November 2011 incident:

> THE STATE: [S]he needed an ambulance just because she was drunk?
>
> MEECE:      [I] don't know.  This ain't the first time that I've had to call the ambulance for her.
>
> THE STATE: Well I – I could understand that based on the nature of your relationship-
>
> MEECE:      Well –
>
> THE STATE: – it probably wasn't the first time.
>
> MEECE:        – the nature of the relationship we left, too.

*Id.* at 622-23.  Meece's counsel objected, and the trial court sustained the objection, but Meece continued to talk:

> MEECE:      She left the hospital.
>
> THE COURT: [M]r. Meece.  Please.
>
> MEECE:      Well, he's going to assume –
>
> THE COURT: Please, let me control –
>
> MEECE:      – something, he's going to assume something.
>
> THE COURT:  – the Courtroom, Okay?
>
> MEECE:      Yes sir.
>
> THE COURT: I'm sustaining the objection.  I'm going to strike [the State's] comment.  I'm telling you for the last time, you answer the questions, I maintain order in the Courtroom.  Do we understand each other?
>
> MEECE:      Yes sir.

*Id.* at 623. Meece's counsel then made a second mistrial motion based on the prosecutor's comment about the nature of Sonya and Meece's relationship and the trial court's statement, made with a raised voice, to Meece about controlling the courtroom. *See id.* at 624-26. The court denied the motion based upon the prosecutor's statement, saying that the evidence was that Meece had battered Sonya in the past and that the prosecutor's statement had not implied anything other than that. *Id.* at 625. The trial court also denied the mistrial motion based upon its own statement to Meece, saying that

> On numerous occasions, in fact out of the presence of the jury, I tried to inform your client what the rules were. In front of the jury, I've tried repeatedly to tell your client who's in charge, what his role is, what [the prosecutor's] role is, what my role is. He's disregarded my admonitions repeatedly in that regard. I'm not going to let his misbehavior and my responses be a mistrial. I'm just not going to do it.

*Id.* at 626.

At the end of the four-day trial, the jury found Meece guilty as charged. He was sentenced to twenty years for the class B felony, enhanced by twenty-five years for the habitual-offender finding, for an aggregate sentence of forty-five years.[1]

Meece now appeals.

### Discussion and Decision

On appeal, Meece argues that the trial court should have granted his mistrial motions because comments made by Sonya, the prosecutor, and the trial court placed him in a position of grave peril.

The decision to grant or deny a mistrial motion is within the sound discretion of the trial court. *Vaughn v. State*, 971 N.E.2d 63, 67-68 (Ind. 2012) (citing *Taylor v. State*,

---

[1] The trial court merged counts 1 and 2 to avoid double-jeopardy concerns.

587 N.E.2d 1293, 1299 (Ind. 1992)). We will reverse a trial court's determination on the issue only if there is an abuse of discretion. *Id.* (citing *McManus v. State*, 814 N.E.2d 253, 260 (Ind. 2004)). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* (citing *Kirby v. State*, 774 N.E.2d 523, 534 (Ind. Ct. App. 2002), *trans. denied.*) We give great deference to the trial court because it is in the best position to gauge the circumstances and impact on the jury. *Id.* (citing *Taylor*, 587 N.E.2d at 1299). "[T]he declaration of a mistrial is an extreme action and is warranted only when no other action can be expected to remedy the situation." *Id.* (quoting *Bedwell v. State*, 481 N.E.2d 1090, 1093 (Ind. 1985)). To prevail on appeal from the denial of a motion for mistrial, the defendant must demonstrate that the statement or conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. *Stokes v. State*, 922 N.E.2d 758, 762-63 (Ind. Ct. App. 2010), *trans. denied*. The gravity of the peril is assessed by the probable persuasive effect of the misconduct upon the jury's decision rather than upon the degree of impropriety of the conduct. *Id.* at 763.

Meece first argues that the trial court erred in denying his request for a mistrial after Sonya's testimony. In response to the State's question about Meece striking her in the head, Sonya testified that Meece had "done that many [] times." Tr. p. 486. Meece argues that this statement allowed the jury to infer that there was a history or a pattern of abuse between Meece and Sonya. Meece also took issue with the fact that Sonya referenced her hospitalization in Indianapolis. It appears that Sonya was hospitalized two

7

times in between the June 2011 and November 2011 batteries, once at Reid Hospital as a result of the battery, and later in Indianapolis for a medical condition unrelated to the battery. But Meece's counsel conceded that he had been unclear; at a pretrial conference he had agreed to allow references to Sonya's hospitalization, but did not specify which hospitalization could be discussed.

The trial court denied the mistrial motion, noting counsel's pre-trial agreement about hospital testimony and saying that it was clear that Sonya was only testifying about two incidents involving Meece. We agree. If counsel intended to preclude any mention of Sonya's hospitalization in Indianapolis, he should have specified as much. Because he did not, he invited any error of which he now complains, and cannot take advantage of any such error. *See Hape v. State*, 903 N.E.2d 977, 997 (Ind. Ct. App. 2009) (holding that a party may not invite error and then later argue the error supports reversal, because error invited by the complaining party is not reversible error), *trans. denied*. And as to Sonya's reference to being battered "many times," her testimony focused on two specific instances of battery—the June 2011 battery and the battery in this case, which occurred in November 2011. We cannot say that the trial court erred in denying Meece's mistrial motion as to Sonya's testimony.

Meece also argues that the court should have granted his mistrial motion based on the prosecutor's statement regarding the nature of Meece and Sonya's relationship. But the prosecutor's statement must be read in context—Meece first stated that "This ain't the first time that I've had to call the ambulance for her." Tr. p. 622. In response to this statement, the prosecutor said that he "could understand that based on the nature of your

8

relationship . . . it probably wasn't the first time." *Id.* at 623. We fail to see how this statement warranted a mistrial. Meece himself stated that this was not the first time he had called an ambulance for Sonya. And the evidence already presented was that Meece had battered Sonya in the past. The prosecutor's statement did not imply anything else and did not place Meece in a position of grave peril.

Meece's final argument appears to be that he was entitled to a mistrial because the trial court's statements about Meece's behavior in the courtroom showed that the court was biased or prejudiced against him. Throughout his testimony, Meece interrupted and spoke over the attorneys and the trial court. On at least six occasions, the court had to speak over Meece and remind him to speak only when asked a question. Finally, after these repeated requests to follow courtroom rules, the trial court raised its voice, saying, "I'm telling you for the last time, you answer the questions, I maintain order in the Courtroom. Do we understand each other?" *Id.* As the trial court noted, it had previously explained the courtroom rules to Meece, both outside of the jury's presence, and later, in front of the jury.[2] The trial court's statement was not a disproportionate response to Meece's continued disregard of courtroom rules, nor does it show bias or prejudice on behalf of the trial court. *See Everling v. State*, 929 N.E.2d 1281, 1288 (Ind.

---

[2] Meece also cites, without analysis, case law holding that "on rare occasions, the comments of a judge have been found to constitute fundamental error." *See* Appellant's Br. p. 11 (citing *Stellwag v. State*, 854 N.E.2d 64, 66 (Ind. Ct. App. 2006)). But in *Stellwag*, the trial court admonished the defendant in front of the jury, objected to a line of questioning prior to the State's objection, and "gratuitously requested in front of the jury that a defense witness refrain from arguing with the State after the witness had responded in a yes or no fashion to the State's question." 854 N.E.d at 69. The trial court's conduct in *Stellwag* is not comparable to the court's conduct here. And in a recent case dealing with this issue, our Supreme Court held that a mistrial was not warranted where the bailiff, at the direction of the trial court, placed his hands over an unruly defendant's mouth in front of the jury. *See Vaughn*, 971 N.E.2d at 68-71.

2010) ("Bias and prejudice violate a defendant's due process right to a fair trial only where there is an undisputed claim or where the judge expressed an opinion of the controversy over which the judge was presiding."). The trial court did not err in denying Meece's mistrial motion on this basis.[3]

Affirmed.

KIRSCH, J., and PYLE, J., concur.

---

[3] At the close of his brief, Meece makes a final claim that "the conduct by the Court, along with [Sonya's] comment, and the State's actions, have a cumulative effect that is so prejudicial and inflammatory that Meece was placed in a position of grave peril . . . ." Appellant's Br. p. 13. But for the reasons discussed above, we found no error in the trial court's treatment of these issues. For the same reasons, we are similarly un-persuaded that the cumulative effect of these statements required a mistrial.