Vernon H. MATHEIS, Appellant (Plaintiff Below),

v.

**FARM FEED CONSTRUCTION COMPANY, K & K Industries, Inc., d/b/a K & K Truss Company, Lumbermate Company and Karl Bickel, Appellees (Defendants Below).**

No. 28A01–8908–CV–301.

Court of Appeals of Indiana, First District.

May 15, 1990.

James R. Fisher, Steven D. Cavellier, Ice Miller Donadio & Ryan, Indianapolis, for appellant.

John B. Drummy, Jennifer Staton Stoesz, Kightlinger & Gray, Indianapolis, for appellees.

ROBERTSON, Judge.

Vernon H. Matheis appeals a jury verdict in favor of the defendants in Matheis's action to recover damages for breach of contract and negligent design or manufacture of trusses used in the construction of a poultry house which collapsed on May 8, 1986.

We affirm.

Matheis argues in this appeal that the trial court abused its discretion in overseeing the presentation of evidence by permitting juror questions during and after Matheis's rebuttal evidence, by permitting defense counsel to ask a question created by one of the jurors, and by permitting the juror to ask a question of a particular witness. Matheis maintains the trial court should have used a procedure similar to that employed by the court in *United States v. Callahan* (5th Cir.,1979), 588 F.2d 1078, *cert. denied,* 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33. In that case, the trial court instructed the jury before opening statements that if any of the jurors had

questions to be asked of a witness during his or her testimony, the question should be written down and submitted to the court for review. Here, the trial court screened the jurors' questions and discussed counsels' objections at the bench before the questions were asked in open court.

In *Carter v. State* (1968), 250 Ind. 13, 234 N.E.2d 650, the Indiana Supreme Court considered the appropriateness of a preliminary instruction which advised the jury that its members would not be permitted to ask questions of the witnesses. The court adopted the view prevalent in a majority of other jurisdictions authorizing juror questioning during the progress of a trial, noting that it is proper for the trial court in its discretion to permit such an interrogation or examination, even after the jury has retired to consider its verdict. 234 N.E.2d at 651 quoting 58 Am.Jur. *Witnesses* § 557, p. 311. However, the court cautioned that despite its holding that the practice should not be forbidden by preliminary instruction, questioning by jurors should not be encouraged either.

The notion that juror questions should not be solicited by the trial judge reappeared in *Cherry v. State* (1972), 258 Ind. 298, 280 N.E.2d 818 where a preliminary instruction tendered by the defendant and advising jurors that they may ask questions was determined to be properly refused.

Applying these principles to the case at hand, we must conclude that the trial court acted properly when it responded to juror questions which arose after presentation of both parties' cases-in-chief. *Cherry* directs that judges not solicit juror questions as the trial court did in *Callahan,* but to permit questions at any time, subject to proper regulation by the court.

Matheis argues that the defense was somehow favored before the jury because defense counsel was allowed to ask a juror's question of Matheis's rebuttal witness. The jurors were specifically charged not to discuss the case among themselves. Any benefit accruing to the defendants by asking the juror's question, therefore, did

not affect the jury as a whole, and would necessarily have been offset by a similar benefit which Matheis derived when his counsel was permitted during rebuttal to ask a question propounded by a juror.

■ Matheis also contends that he was harmed by the procedure because it precluded him from responding to a new theory raised by the single question "who did put the extra support on the bottom truss?" The witness's response revealed for the first time that Matheis's son had at some time nailed extra support to the trusses. Matheis contends that he should have been able to present evidence to explain the relationship between the "extra support" on the trusses and the collapse of the chicken house but instead was forced to forego additional testimony so as not to alienate a jury about to retire.

Matheis did not make an offer to prove so we can only speculate as to what his witnesses would have said had he called them. We presume that the witnesses would have said that the placement of scabs on the trusses did not contribute to the collapse of the chicken coop. Matheis's witness Male, whom he says he would have called, had already testified that the placement of additional support prevented the collapse from occurring sooner.

In any event, Matheis knew before the answer was elicited what the nature of the testimony would be, yet he did not move for a continuance to locate his witnesses, establish for the record the nature of their testimony or their unavailability. Under these circumstances, we can discern no harm.

■ Matheis also argues that the trial court abused its discretion by permitting a juror to ask a question after the close of all the evidence because the procedure precluded Matheis from qualifying a misleading answer. The juror wanted to know whether there were four or eight rods hanging from the bottom cord. Virtually the same question was asked of Matheis's expert Male by defense counsel during cross-examination. Matheis spent much of redirect examination clarifying his witness's response. Matheis therefore was not denied an opportunity to offer evidence on the issue or respond to it. He has not demonstrated how his examination would have been different had the juror's question been elicited earlier during the case-in-chief.

Again, with respect to the question concerning the number of rods, Matheis argues he was prejudiced when the trial court permitted the juror to direct his question to a particular witness. Matheis suggests that he was selected to answer the question because he was present, not because he was qualified to answer. Again, we are talking about a single question which witness Matheis was able to answer, arguably from his own personal knowledge. The point of permitting the jurors to resolve their questions was to aid them in their understanding of the facts and search for the truth. It was not an opportunity for Matheis to retry his case.

Lastly, Matheis contends that the juror's question concerning the number of rods elicited inadmissible hearsay. As we have indicated, no harm could have come to Matheis from this testimony if it was hearsay (Matheis did not establish by preliminary question the basis of the witness's knowledge), as it was merely cumulative of other properly admitted evidence already on the record.

Judgment affirmed.

RATLIFF, C.J., and MILLER, J., concur.