Gary STANCOMBE, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 53A01–9206–CR–202.

Court of Appeals of Indiana,
First District.

Dec. 30, 1992.

David A. Collins, Deputy Public Defender, Bloomington, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Richard C. Webster, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee-plaintiff.

ROBERTSON, Judge.

Gary Stancombe appeals his jury trial conviction of reckless homicide as a class C felony, for which he received an enhanced,

eight-year sentence. On appeal, he claims the trial court's procedure for permitting jury questions was an abuse of discretion. We affirm.

Stancombe grounds his claim of reversible error on questions propounded by members of the jury during the course of his trial. A summary of those questions is:

1. A question regarding whether Stancombe was charged with murder;

2. A question which requested that a witness demonstrate a head shaking incident referred to in his testimony;

3. A question which sought additional information about the cause of bruises, lacerations, and stippling on the body of the deceased;

4. A question which sought to determine how long it took the deceased to die after having been shot;

5. A question about whether the exhibit envelope was sealed after the gun had been placed in it;

6. A series of questions relating to the mechanical operation of the pistol and the ammunition used, as well as the terms used to describe those operations; and

7. A question about finding fingerprints on the pistol by the police.

■ Our supreme court has stated that a preliminary instruction which tells the jurors they are not permitted to ask questions of any of the witnesses is erroneous. *Carter v. State* (1968), 250 Ind. 13, 234 N.E.2d 650. The practice of permitting jurors to propound questions should not be encouraged by the trial court, but it should not be forbidden by preliminary instruction. *Id.* at 16, 234 N.E.2d at 652. *See also, Dolezal v. Goode* (1982), Ind.App., 433 N.E.2d 828 (*Carter* did not rely upon the Indiana Constitution and applies in a civil context); *Tyson v. State* (1979), 270 Ind. 458, 386 N.E.2d 1185 (*Carter* applied where trial court allowed jurors to ask questions of counsel following their respective arguments; although procedure not recommended, prejudice which would require reversal not shown). As a question is propounded during the course of a trial, it is within the sound discretion of the trial court to make a determination about whether the question is for the evident purpose of discovering the truth and whether such question is proper. *Carter* 250 Ind. at 16, 234 N.E.2d at 652.

■ Although it is error to instruct the jury that it could not ask questions, this is not tantamount to instructing the jury that it may. *Cherry v. State* (1972), 258 Ind. 298, 300, 280 N.E.2d 818, 820 (no error in trial court's refusal to instruct jurors that they may ask questions of the witnesses during the trial). The practice of permitting jurors to ask questions should not be encouraged for the reasons that generally jurors are not familiar with the rules governing the admission of evidence; that, in the very nature of such a situation, counsel quite naturally will hesitate to object to a question propounded by a juror, even though it may be incompetent; and that the practice is so dangerous to the rights of the litigant. *Id.* (quoting *White v. Little* (1928), 131 Okl. 132, 268 P. 221).

The appellant in *Cheeks v. State* (1977), 266 Ind. 190, 361 N.E.2d 906, challenged the procedure used by the trial court when it allowed the jurors to ask questions of witnesses. The jurors submitted written questions to the court through the bailiff at the conclusion of direct and cross-examination. Before any question so submitted was posed to a witness, defense and prosecution counsel had been summoned to the bench, shown the question, and asked if there were any objections. The appellant objected to no particular questions, but objected to the procedure used on the apparent ground that it would be prejudicial to the defense to present any objection to such a question in the view of the jury. The court there stated:

> The procedure used in this case, in which counsel are summoned to the bench to see the question before it is posed, would seem to be intended to permit objections out of the hearing, if not the presence, of the jury. The Appellant has not shown that this procedure failed to remedy the problems raised in the *Carter* and *Cherry* decisions, nor has he presented any

question posed through this procedure as improper or prejudicial.

*Id.* at 195–196, 361 N.E.2d at 910 (no abuse of discretion under the circumstances).

In *Tyson,* 386 N.E.2d 1185, a juror offered a question of counsel after arguments. The jurors submitted written questions to the judge, who examined them to see if they were proper. Counsel objected to the procedure in the presence of the jury and claimed this prejudiced him. The *Tyson* court did not accept the claim of prejudice because the trial judge had instituted the procedure and had invited the objection. Thus, the jury would not have fixed responsibility or prejudice on either of the parties.

In *Matheis v. Farm Feed Const. Co.* (1990), Ind.App., 553 N.E.2d 1241, the appellant claimed abuse of discretion where the trial court permitted juror questions during and after appellant's rebuttal evidence, permitted opposing counsel to ask a question created by one of the jurors, and permitted the juror to ask a question of a particular witness. The appellant maintained that the trial court should have used a procedure whereby the trial court would have instructed the jurors that if any of them had had question, it should have been written down and submitted to the court for review. Instead, the court screened the jurors' questions and discussed counsels' objections at the bench before the questions were asked in open court. On appeal, this Court stated that *Cherry,* 258 Ind. 298, 280 N.E.2d 818, directs that judges not solicit juror questions but to permit questions at any time, subject to proper regulation by the court. *Matheis,* 553 N.E.2d at 1242. Under the circumstances, the appellant did not show he had been harmed by the procedures. *Id.* (The court examined the substantive evidence elicited by the questions when it addressed harm.)

Consistent with *Carter,* 250 Ind. at 16, 234 N.E.2d at 652, when the trial court determines whether the question is for the evident purpose of discovering the truth or whether a question is proper, it necessarily examines the substance of the question posed by the juror. In this case, Stancombe claims the procedure used by the trial court was an abuse of discretion, not that the substance of the questions was improper or prejudicial. Other jurisdictions have addressed this issue and have advised the trial courts in the respective states about under what circumstances, if any, jurors are permitted to submit questions to witnesses and about the best procedure to use when doing so. If any such advice is needed in Indiana, it should come from our supreme court. We will review the procedure employed by the trial court to determine whether the trial court abused its discretion. This requires us to determine whether the trial court's action was prejudicial to Stancombe. See *Emmons v. State* (1986), Ind., 492 N.E.2d 303, 305. In order to adequately measure the harm, however, we necessarily must examine the substance of the questions and answers.

Stancombe challenges the procedure the trial court adopted because it did not screen the nature or the wording of the questions. The trial court did not require the questions to be written and did not excuse the jury during discussions with counsel. Thus, counsel was forced to object in the presence of the jury, which Stancombe claims prejudiced him.

Stancombe claims written questions would have facilitated screening and direct questioning of witnesses by the jurors prevented such screening. In *Matheis,* 553 N.E.2d 1243, however, the appellant claimed he was prejudiced when the trial court permitted a juror to direct his question to a particular witness. The procedure did not amount to reversible error in that case, and the result is the same under the circumstances of this case.

Although the trial court informed the jurors they had the right to ask questions throughout the trial, the matter is actually left to the trial court's discretion. Nevertheless, the trial court here abused no discretion with regard to any of the questions asked. The trial court stated that jurors would be allowed to pose questions aloud during the trial. The questions would be directed to the trial judge, who would discuss the questions with counsel to determine whether they were proper. Counsel

would then have the opportunity to object. If proper, the witness would be allowed to answer the questions.

■ The first question asked about the information, and the trial judge eventually read a portion of the preliminary instructions, including the information for murder. The trial court had read this information before, and the parties agreed this was the correct procedure. We do not believe Stancombe was prejudiced by the procedure which allowed the trial court to read the information once again.

■ The second question eventually resulted in a demonstration about how Stancombe had shaken his head when he had responded to a question from a police officer. Counsel acknowledged he had no objection to the demonstration as long as there was no commentary about what the head shaking meant, which there was not. We do not believe Stancombe was harmed by the demonstration.

The third question dealt with the procedure itself, with the answer that the question had to be directed to the judge. We discern no harm from this question or from what resulted from it.

■ The fourth and fifth questions addressed the distance from which and the time during which the gun was fired. The witness stated that the end of the gun had not been next to the skin of the victim but would give no other distance or time opinions. This testimony was consistent with Stancombe's version of the events, that he had picked up the gun and it had discharged. The trial court acted well within its discretion when it allowed the questions, which were proper and asked for the evident purpose of discovering the truth.

■ The sixth question dealt with whether the package which contained the gun had been taped shut. The State withdrew its motion to admit the weapon at that time. This did not prejudice Stancombe but benefitted him.

■ The trial court received the seventh and eighth questions, which dealt with terms and mechanisms of firearms. The trial court informed the jury that a ballistics expert would appear to testify about the issues the next day. We do not find this exchange to have prejudiced Stancombe.

■ The ninth question addressed whether an expert had found fingerprints on any of various exhibits. The expert stated he had not, and Stancombe has not shown he was prejudiced by the question.

■ The tenth question concerned whether the gun in question was designed to be used with a particular kind of bullet. The expert answered that the gun will take any nine-millimeter Luger ammunition. The eleventh question concerned a demonstration about how the bullets are ejected from the gun. The expert explained about how spent cartridges are ejected; and the juror volunteered that live cartridges, not spent ones, were meant. The expert then explained about how live cartridges are expelled. The twelfth question asked for a definition of the term racking. The expert explained that the term meant to work the action of the weapon, either to expel a cartridge or to put a cartridge in the chamber. The thirteenth question concerned whether the carriage can be pulled back with the safety on. The expert acknowledged that the weapon can be armed with the safety on. The fourteenth and final question addressed the order in which cartridges are expelled from the weapon. Counsel for Stancombe had no objection to the question other than that it was not in writing. The expert stated that, in order to determine the sequence in which the cartridges were ejected, one would have to know the order in which the cartridges were loaded. We conclude that these questions were not improper and were asked for the evident purpose of discovering the truth. The trial court therefore abused no discretion when it allowed the jurors to ask the questions.

■ Although the trial court could have utilized a different and, perhaps, better procedure, it did not abuse discretion with the procedure it used to allow the jurors to ask questions. The trial court stated that

questions were to be directed at the judge and not a witness. Counsel were exposed to the questions before the trial court allowed the witnesses to answer them. Counsel also had the opportunity to object to any particular question if it were improper or prejudicial and could have done so at the bench outside the hearing of the jury. Many of the questions were proper and for the evident purpose of discovering the truth. Moreover, none of the questions were so harmful to Stancombe that reversal is required.

Judgment affirmed.

RATLIFF, Senior Judge, and STATON, J., concur.