## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 19 2019, 9:01 am

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Zachary J. Stock
Zachary J. Stock, Attorney at Law, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry A. Flores, Jr.
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Charles Dugger, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | July 19, 2019 <br><br> Court of Appeals Case No. 18A-CR-1902 <br><br> Appeal from the Hendricks Superior Court <br><br> The Honorable Mark A. Smith, Judge <br><br> Trial Court Cause No. 32D04-1503-FA-1 |

**May, Judge.**

[1] Charles Dugger appeals his convictions of four counts of Class A felony child molesting,[1] two counts of Class B felony child molesting,[2] one count of Class C felony child molesting,[3] one count of Class A felony vicarious sexual gratification,[4] and one count of Class B felony vicarious sexual gratification.[5] He presents two issues for our review, which we restate as:

> 1. Whether the trial court abused its discretion when it denied Dugger's motion to dismiss based on speedy trial grounds; and

> 2. Whether the trial court abused its discretion when it denied Dugger's motion for mistrial.

We affirm.

## Facts and Procedural History

[2] In 1993, while on probation for multiple child molesting convictions, Dugger resided with his wife and five children. Two of the children were Dugger's children and the other three were his stepchildren. Dugger would often be left alone with the children while his wife worked. During that time, Dugger committed sexual acts against two of his minor stepdaughters and one of their

---

[1] Ind. Code § 35-42-4-3 (1986).

[2] Ind. Code § 35-42-4-3 (1986).

[3] Ind. Code § 35-42-4-3 (1986).

[4] Ind. Code § 35-42-4-5 (1986).

[5] Ind. Code § 35-42-4-5 (1986).

friends. The children eventually reported this behavior to Dugger's wife, who contacted police.

[3] On September 20, 1993, the State[6] charged Dugger with eighteen counts of child molesting. Police could not arrest Dugger because he had left Indiana and traveled to Arizona. On November 20, 1993, Dugger was arrested in Arizona and charged with sexual assault, sexual conduct with a minor, and child molesting based on an incident involving a ten-year-old girl in Arizona. Dugger was convicted in Arizona and sentenced to twenty years incarcerated.

[4] In 1997, while incarcerated in Arizona, Dugger sought disposition of the 1993 charges pursuant to the Interstate Agreement on Detainers. Indiana accepted temporary custody of Dugger and began his transport to Indiana. En route, Dugger escaped. Dugger was later arrested in Minnesota and charged with escape, auto theft, and assault. Dugger was convicted in Minnesota and sentenced to three years incarcerated. In 1998, Dugger was transported back to Arizona to complete his sentence there.

[5] In 2002, the State filed a motion to dismiss the 1993 charges against Dugger without prejudice because he would be incarcerated in Arizona and Minnesota until 2015. The trial court granted the State's motion and Dugger did not appeal. In 2013, Dugger completed his sentence in Arizona and was

---

[6] The State also filed a petition for an order revoking probation in November 1993. The petition was amended in 2013 to address Dugger's 1993 violations. Upon finding Dugger's 1993 arrest violated his probation, he was ordered to serve 2912 days incarcerated following his sentence for the 1993 crimes.

transported to Minnesota to complete his sentence there. In November 2014, Dugger completed his sentence in Minnesota and was transported to Indiana to answer for the probation violations from 1993.

[6] In March 2015, the State charged Dugger with nine counts of Class A felony child molesting and two counts of Class A felony vicarious sexual gratification. On July 7, 2015, Dugger filed a motion to dismiss the charges against him because they violated his right to a speedy trial. The trial court denied Dugger's motion to dismiss. Dugger filed a request for certification of the issue for interlocutory appeal, which the trial court also denied. After multiple continuances, Dugger's first trial began on November 6, 2017. According to the Chronological Case Summary, Dugger filed a motion for mistrial the same day, after some of the evidence was presented, and the trial court granted his motion for mistrial.[7]

[7] Dugger's second trial began on May 14, 2018. On the second day of trial, one of Dugger's victims made an unsolicited comment regarding Dugger's incarceration. Dugger moved for a mistrial, and the trial court denied the motion. The trial court indicated it would make an admonishment, but Dugger refused. At the end of the jury trial, the trial court entered convictions of four counts of Class A felony child molesting, two counts of Class B felony child molesting, one count of Class C felony child molesting, one count of Class A

---

[7] The record does not indicate the reason Dugger's motion for mistrial was granted in his first jury trial.

felony vicarious sexual gratification, and one count of Class B felony vicarious sexual gratification. The trial court sentenced Dugger to an aggregate term of seventy years incarcerated.

# Discussion and Decision

## Speedy Trial

[8] Our standard of review in cases involving a criminal defendant's motion to dismiss is well-settled:

> A defendant has the burden of proving, by a preponderance of the evidence, all facts necessary to support a motion to dismiss. *Townsend v. State*, 793 N.E.2d 1092, 1093 (Ind. Ct. App. 2003), *trans. denied*. When a party appeals from a negative judgment, we will reverse the trial court's ruling only if the evidence is without conflict and leads inescapably to the conclusion that the party was entitled to dismissal. *Id*.

*Johnson v. State*, 810 N.E.2d 772, 775 (Ind. Ct. App. 2004), *trans. denied*. When, as here, the motion to dismiss is premised on a question of law, our review is de novo and we owe no deference to the trial court's legal conclusions. *Montgomery v. State*, 14 N.E.3d 76, 78 (Ind. Ct. App. 2014).

[9] The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." Similarly, Article 1, Section 12 of the Indiana Constitution provides, in relevant part, that "[j]ustice shall be administered freely, and without purchase; completely, and without denial; speedily, and

without delay." Our analysis of an alleged speedy trial violation is the same whether the violation is claimed under the federal or state constitution. *Logan v. State*, 16 N.E.3d 953, 961 (Ind. 2014). To determine if a defendant has been deprived of his right to a speedy trial, we consider four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): (1) the length of the delay; (2) the reason(s) for the delay; (3) whether the defendant asserted his right to a speedy trial; and (4) the prejudice to the defendant. *See Crawford v. State*, 669 N.E.2d 141, 145 (Ind. 1996) (applying *Barker* factors). We consider each of these factors as applied to the facts before us.

### *Length of Delay*

[10] Dugger argues that the delay for purposes of his speedy trial analysis should date back to 1993, when the charges were originally filed prior to his abscondence to Arizona and subsequent criminal activity resulting in incarceration there. However, in 2002, after Dugger escaped custody en route to Indiana from Arizona and committed additional crimes in Minnesota, the State was granted a motion to dismiss the 1993 charges against Dugger because Dugger was scheduled to be incarcerated in Arizona until 2015. Dugger did not appeal the grant of that motion to dismiss.

[11] The facts here parallel those in *U.S. v. MacDonald*, 456 U.S. 1 (1982). In that case, MacDonald was charged with the murder of his wife and two children by a military court in 1970. *Id.* at 4. Later that year, the charges against MacDonald were dismissed by the commanding general and MacDonald was honorably discharged from the Army. *Id.* at 5. Five years later, in 1975, a

civilian court charged MacDonald with the murders of his wife and two children. *Id*. MacDonald filed a motion to dismiss based on the delay in prosecution, which was denied. *Id*. MacDonald was ultimately convicted of the murders and sentenced to three consecutive terms of life imprisonment. *Id*.

[12] On appeal, MacDonald argued the delay in prosecution violated the Speedy Trial Clause of the Sixth Amendment. The United States Supreme Court disagreed, holding the Speedy Trial Clause of the Sixth Amendment "does not apply to the period before a defendant is indicted, arrested or otherwise officially accused[.]" *Id*. at 6. Additionally, "the Speedy Trial Clause has no application after the Government, acting in good faith, formally drops charges." *Id*. at 7. The Court noted the Speedy Trial Clause

> is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.
>
> Once charges are dismissed, the speedy trial guarantee is no longer applicable. At that point, the formerly accused is, at most, in the same position as any other subject of a criminal investigation. Certainly the knowledge of an ongoing criminal investigation will cause stress, discomfort, and perhaps a certain disruption in normal life. This is true whether or not charges have been filed and then dismissed. This was true in *Marion*, where the defendants had been subjected to a lengthy investigation which received considerable press attention. But with no charges outstanding, personal liberty is certainly not impaired to the same degree as it is after arrest while charges are pending. After the charges against him have been dismissed, "a

citizen suffers no restraints on his liberty and is [no longer] the subject of public accusation: his situation does not compare with that of a defendant who has been arrested and held to answer." *United States v. Marion*, 404 U.S. [307,] 321, 92 S.Ct. [455,] 463 [(1971)].

Following dismissal of charges, any restraint on liberty, disruption of employment, strain on financial resources, and exposure to public obloquy, stress and anxiety is no greater than it is upon anyone openly subject to a criminal investigation.

*Id*. at 8 - 9 (footnote omitted). Applying the holding in *MacDonald*,[8] we conclude the relevant timeframe for our analysis is from March 2015, when the charges were refiled, to November 2017, when Dugger was tried.

### *Reason(s) for Delay*

[13] After charges were refiled in March 2015, Dugger requested and was granted three continuances. In addition, two weeks before the first trial date in January 2017, Dugger requested and was granted the appointment of a special investigator at State's expense. One time, the court continued the trial on its own motion. Finally, immediately prior to the second trial date in June 2017, the court ordered a continuance of the trial and indicated, "State is charged with continuance." (App. Vol. II at 15.) Based on the fact that the majority of the continuances were attributable to Dugger, we conclude he was primarily

---

[8] While Dugger's liberty remained constrained after the dismissal of the 1993 charges, we conclude *MacDonald* is applicable because the dismissal put him in the same position as any other person in his specific situation under criminal investigation. That he was incarcerated on other charges is of no relevance.

responsible for the delay between his arrest and trial date. *See State v. Lindauer*, 105 N.E.3d 211, 215-6 (Ind. Ct. App. 2018) (delay in trial attributable to defendant after defendant requested and was granted five continuances), *trans. denied*.

### *Defendant's Assertion of Speedy Trial Right*

In his motion to dismiss, Dugger indicated he was entitled to dismissal of the charges against him because the State violated his right to a speedy trial. On appeal, Dugger has not made an argument regarding this *Barker* factor. We conclude, therefore, that this factor weighs neutrally.

### *Prejudice to Defendant*

Prejudice to the defendant based on a delay of trial is evaluated based on: (1) prevention of oppressive pretrial incarceration; (2) minimization of anxiety and concern of the accused; and (3) limitation of impairment of accused's defense. *Barker*, 504 U.S. at 532. Dugger's argument regarding this factor focuses on the third interest - the limitation of his defense. He argues, "the delay prejudiced his defense because various sources of information had been cut off by the passage of time, including alibi evidence provided by long-lost records and now deceased witnesses, and there was ample opportunity for the distortion of memory." (Br. of Appellant at 15.)

Again, Dugger's argument focuses on the time prior to his 2015 arrest, which we have determined not to be relevant to our analysis. He has not indicated how the two-year delay between his arrest and trial prejudiced him. However,

"[a] delay of more than one year is presumed prejudicial." *Bowman v. State*, 884 N.E.2d 917, 921 (Ind. Ct. App. 2008), *reh'g denied*, *trans. denied*. Nevertheless, as the State notes, any passage in time, generally, actually favored Dugger's defense because many witnesses could not remember exact details of Dugger's crimes against them.

[17] Considering the balance of all four *Barker* factors, we conclude the trial court did not abuse its discretion when it denied Dugger's motion to dismiss based on a violation of his right to a speedy trial because the relevant time frame did not begin until his arrest in 2015, he was primarily responsible for the delay in trial dates thereafter, and he suffered no prejudice from the delay. *See id.* (right to speedy trial not violated when trial delayed for over four years at fault of defendant and defendant did not demonstrate prejudice).

## Mistrial

[18] Dugger also asserts the court abused its discretion when it denied his motion for mistrial based on testimony he alleged violated a motion in limine. A mistrial is an "extreme remedy warranted only when no other curative measure will rectify the situation." *Kirby v. State*, 774 N.E.2d 523, 533 (Ind. Ct. App. 2002), *reh'g denied*, *trans. denied*.

> Because the trial court evaluates first-hand the relevant facts and circumstances at issue and their impact on the jury, it is in the best position to evaluate whether a mistrial is warranted. We accordingly review the trial court's denial of a motion for mistrial for an abuse of discretion.

*Weisheit v. State*, 26 N.E.3d 3, 15 (Ind. 2015) (internal citations omitted), *reh'g denied*, *cert. denied* 136 S. Ct. 901 (2016). The court abuses its discretion when its decision is "clearly against the logic and effect of the facts and circumstances before the court." *Vaughn v. State*, 971 N.E.2d 63, 68 (Ind. 2012). "[R]eversal is required only if the defendant demonstrates that he was so prejudiced that he was placed in a position of grave peril." *Oliver v. State*, 755 N.E.2d 582, 584 (Ind. 2001).

[19]    During Dugger's trial, when asked what she remembered about incidents involving Dugger when she was five years old, A.W. testified:

> I remember him making me and my brother take a shower with him. And I do remember him telling uh, me I don't know about my other siblings, uh, not to tell my mom because I remember for the longest time I didn't - we didn't say anything to my mom and it wasn't until - I remember we lived in Plainfield when I did finally tell my mom but then I also remember we moved to Bloomington and he moved with us and it wasn't not [sic] long after that when he went to prison.

(Tr. Vol. III at 118.)[9] Dugger did not object. The State then stated, "Now let's stay focused on what transpired in this case. Uh, do you - I just want to come back to that question. Did he ever threaten to hurt you in any way to get you to not tell anyone about what he was doing to you?" (*Id.*) A.W. answered "I

---

[9] Dugger also claims A.W. called him a "monster" earlier in her testimony, but he does not cite that portion of the record. As we have long held that our court "will not search the record to find a basis for a party's argument," *Young v. Butts*, 685 N.E.2d 147, 151 (Ind. Ct. App. 1997), we will not address Dugger's argument regarding that comment.

don't remember." (*Id*.)  The State indicated it was ready to pass the witness for cross-examination and Dugger requested a brief recess.

[20]  After the jury was excused, Dugger asked the court to declare a mistrial based on A.W.'s comment that Dugger went to prison, which was a violation of the motion in limine prohibiting any testimony regarding Dugger's criminal history.  The Court decided to take the matter under advisement, asked the parties to file briefs on the motion for mistrial, and Dugger cross-examined A.W.  The next day, after the State rested its case, the trial court addressed Dugger's motion for mistrial:

> Uh, the first thing we want to deal with is the Defense's motion for mis-trial from yesterday.  I did have a chance to review both briefs that were filed as well as all the case law and I'm going to deny the motion at this time after considering the evidence and the testimony and reviewing transcript of the - of the witness testimony yesterday and the cases and briefs that were filed.  The testimony was isolated and not repeated.  I didn't find any deliberate action by the State to try and elicit that testimony.  Uh, you know obviously there's testimony through other - through other witnesses, uh, with regard to the charges.  There's other evidence of guilt from which the jury can find guilt through other witness testimony besides the witness who made the disclosure.  I recognize the Defense's concern but weighing all those factors I've decided to - to deny the motion for mis-trial at this time.

(*Id*. at 176.)  The court and parties discussed other matters, and then the conversation returned to the trial court's decision regarding Dugger's motion for mistrial:

[Defense Counsel]: . . . I had not - I had not, uh, excluded the possibility of an admonition at any point in our conversations yesterday. However, having said that I - I do not wish -

[Court]: Okay.

[Defense Counsel]: - to have an admonition and I -

[Court]: I guess I should make it clear on the record. I - I didn't find that there was a waiver. I mean I know that that was a discussion that we had yesterday but I forgot to ask her just a few minutes ago if you wanted an admonition or not. I was going to give you one if you wanted it but obviously you've made it clear you didn't but I wanted to be clear that that was not the basis of my denial. I didn't find that there was a waiver of that issue.

[Defense Counsel]: I'm afraid that would simply highlight and emphasize the evidence.

(*Id*. at 181-2.)

[21] The facts here are almost identical to those in *Frentz v. State*, 875 N.E.2d 453 (Ind. Ct. App. 2007), *trans. denied*. In that case, Frentz requested a mistrial after a witness, Turner, testified: "I got a hold of [an officer] to begin with because [Frentz] was talkin' about havin' Chuck [Woolsey, a person alleged to be dating Frentz's girlfriend] killed." *Id*. at 467. Based on a motion in limine wherein the court granted Frentz's motion that his request to kill Chuck not be mentioned, Frentz requested a mistrial. *Id*. at 468. The trial court denied Frentz's motion and "said it would issue an admonishment, if requested." *Id*. Like here,

Frentz's counsel did not request an admonishment, and the trial court did not give one. *Id.*

[22] Our court determined Frentz had waived the issue for our review because he had rejected the court's offer of an admonishment. *Id.* However, waiver notwithstanding, our court held the trial court did not abuse its discretion when it denied Frentz's motion for mistrial because "[t]here is no indication that the State deliberately elicited Turner's nonresponsive answer, and Frentz's plan to kill Woolsey was never mentioned again during the lengthy trial." *Id.* The same is true here.

[23] Dugger has waived our review of the denial of his motion for mistrial because he rejected the trial court's offer of an admonishment. *See Boyd v. State*, 430 N.E.2d 1146, 1149 (Ind. 1982) (Boyd's refusal of the trial court's offer of an admonishment following his motion for mistrial based on his belief that "doing so would cause greater emphasis to be given to the statement" waived his argument of error in the denial of his motion for mistrial). Waiver notwithstanding, like in *Frentz*, the State did not elicit A.W.'s comment about Dugger's incarceration and Dugger's time in prison was not mentioned again during trial. We therefore conclude the trial court did not abuse its discretion when it denied Dugger's motion for mistrial.

# Conclusion

[24] Dugger's right to a speedy trial was not violated based on the *Barker* factors, and the trial court did not abuse its discretion when it denied Dugger's motion for mistrial. Accordingly, we affirm his convictions.

[25] Affirmed.

Mathias, J,. and Brown, J., concur.